Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Brandt Silverkorn (SBN 323530)
bsilverkorn@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300

*Attorneys for Individual Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE TUMBLER RIDGE SHOOTING LITIGATION | Lead Case No. 3:26-cv-03701-JSC<br><br>**INDIVIDUAL PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT RE: PLAINTIFFS' ADMINISTRATIVE MOTIONS TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (DKT. 76)** |
| This Document Relates To:<br><br>All Individual Actions | Judge: Hon. Jacqueline Scott Corley<br>Courtroom 8–19th Floor |

Defendants designated the entirety of Jesse Van Rootselaar's ChatGPT usage logs as "Confidential" under the agreed protective order. (Decl. of Brandt Silverkorn in Supp. of Pls.' Resp. ("Silverkorn Decl.") ¶ 2.) Individual Plaintiffs challenged those designations except as to prompts from Van Rootselaar or responses by ChatGPT that included (1) tactical advice and operational guidance for making explosives or other weapons, (2) potential references to living people, (3) potential minor sexual content, or (4) non-public medical information. (*Id.*) Defendants rejected those targeted redactions (*id.* ¶ 4) and now seek a blanket order sealing virtually all references in Individual Plaintiffs' operative complaints to the messages exchanged between ChatGPT and Van Rootselaar. (Defs.' Statement Pursuant to Civil L.R. 79-5(f)(3), Dkt. 76 ("Stmt."); Defs.' Proposed Order, Dkt. 76-5.) But their Statement fails to explain why indiscriminately redacting this information *now*—especially when many chats have already been published verbatim in the press—would protect any compelling interest. One inapposite affidavit from Canadian law enforcement, conclusory references to the Stored Communications Act, and vague concerns about the "assertions" of a foreign regulatory agency (Stmt. at 5) cannot outweigh the "strong presumption in favor of access" to this Court's docket. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003)). The countervailing interests Defendants identify could easily be protected by "narrowly tailored" redactions along the lines Individual Plaintiffs have proposed. Civil L.R. 79-5(c)(3); (*see* Pls.' Proposed Order at 1–2.)

**First**, Defendants overstate concerns associated with the investigation by the Royal Canadian Mounted Police ("RCMP"). Defendants rely principally on a police affidavit sworn on March 6, 2026, less than a month after the attack, opposing unredacted release of the RCMP's "Information to Obtain" ("ITO") (a Canadian filing akin to an application for a search warrant).[1] (Herrera Decl. Ex. A at 88–94, Dkt. 76-2.) The affiant attests to concerns that premature disclosure of "evidence outlined in this Information to Obtain" might jeopardize the ongoing investigation or inspire copycats. (*Id.* at 92–94.)

The affiant's assessment of the risk to the investigation is arguably inapplicable here, because

[1] *See* Criminal Code, R.S.C. 1985, c. C-46, §§ 487(1), 487.014(1)–(2) (Can.) (production order issues on sworn "*ex parte* application made by a peace officer" who has "reasonable grounds to believe" that data in a party's possession "will afford evidence" concerning the offense).

the chat logs themselves were *not* included, or even incorporated, in the ITO. Partial publication of *one* piece of evidence in a civil proceeding, more than eight months after the shooting, is an entirely different proposition from the full release of a search warrant application, which likely contained information about police theories or potential investigative targets, just weeks after the event.[2] The portions of the logs referenced in the operative complaints do not shed any similar light on the RCMP's work—the existence, and some contents, of Van Rootselaar's ChatGPT accounts are public knowledge, the references in the complaints are geared only towards establishing civil liability for Plaintiffs' claims, and in any case, Individual Plaintiffs are not privy to the RCMP's thinking. Similarly, the RCMP's statements following the arrest of James Cody Bryant merely show that Canadian police have used appropriate caution in disclosing *their own* "investigative theories and actions" to the public (Herrera Decl. Ex. C at 3, Dkt. 76-4). They do not evince any concrete worry by law enforcement that the chat references at issue in *these* complaints, *at this time*, would undermine the investigation. In short, the Statement's avowed fears of disrupting any criminal prosecution amount to no more than "hypothesis or conjecture," an inadequate basis for sealing a pleading. *Kamakana*, 447 F.3d at 1178–79 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

As to the danger of copycat attacks, Individual Plaintiffs share that concern and have never objected to confidentiality designations for material that might assist a future attacker, including operational guidance for making explosives and modifying weaponry. (Silverkorn Decl. ¶ 2.) Individual Plaintiffs would not oppose (at this juncture at least) a targeted sealing request that addressed those concerns more specifically. (*See* Pls.' Proposed Order; *see also TML Recovery, LLC v. Cigna Corp.*, 714 F. Supp. 3d 1214, 1218 (C.D. Cal. 2024) ("Even where a party establishes a compelling reason or good cause to support sealing, its request must be narrowly tailored to a limited amount of information.").

Moreover, the general contents of Van Rootselaar's chats (and many verbatim excerpts) are

---

[2] Indeed, a court agreed to release the redacted version of the ITO in early August, indicating that the articulated concerns about sealing had grown, to some extent, stale. *See* Michelle Ghoussoub, *Unsealed Documents Reveal Details of RCMP's Response, Investigation into Tumbler Ridge Shooting*, CBC News (Aug. 13, 2026, 5:00 AM), https://www.cbc.ca/news/canada/british-columbia/tumbler-ridge-unsealed-documents-9.7305135 [https://perma.cc/DC58-YAB6].

now publicly known, as the result of an article published six weeks ago in *Mother Jones*. *See* Mark Follman, *ChatGPT Helped Tumbler Ridge Shooter Focus on Guns, Tactics, and Terror*, Mother Jones (Sept. 24, 2026), https://www.motherjones.com/media/2026/09/chatgpt-tumbler-ridge-mass-shooter-openai/ [https://perma.cc/7X79-BU3D]. Individual Plaintiffs' operative complaints reproduce many of the same chat quotations that appeared in the piece, which Defendants nonetheless propose to seal. *See, e.g.*, *Stacey* First Am. Compl. ¶¶ 19–20, 22, 57, 98, 100, 105–06, 127–29, 248, Dkt. 62-3 (reciting text from chat logs also quoted by Follman); Dkt. 76-5 at 2 (asking to seal these sections). Sealing is manifestly inappropriate for information that is "already publicly available." *Kamakana*, 447 F.3d at 1184. Further, Follman's detailed reporting gave the public considerable insight into the general tenor of the chats, further blunting any risk to the investigation from additional (but broadly similar) disclosures in the operative complaints. *See, e.g.*, *CBS, Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir. 1985) ("The government's interests in law enforcement are implicated in this case, but most of the information the government seeks to keep confidential concerns matters that might easily be surmised from what is already in the public record.").

**Second**, the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2713, provides no basis to maintain this information under seal, for several reasons. To begin, OpenAI has not established that it is subject to the Act as either an "electronic communication service" ("ECS") or a "remote computing service" ("RCS"); the relevant provisions "do not apply when the provider of ECS or RCS is accessing the user's content for purposes other than facilitating communications [between users] or storing the content as backup for the user." *Snap, Inc. v. Superior Ct.*, 103 Cal. App. 5th 1031, 1062 (2024), *review granted*, No. S28626 (Cal. Sept. 18, 2024).[3] Here, OpenAI does not facilitate communications *between* users, it merely allows users to input prompts into ChatGPT and provides responses to those prompts. And it uses those prompts for its own purposes, most notably to further train its large language models. (*See*, *e.g.*, Silverkorn Decl. Ex. 1 at 4–5 (ChatGPT December 2024

---

[3] *See also Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1055 (N.D. Cal. 2025) ("Defendant, however, is not an electronic communication service because its website does not allow customers to send and receive messages to *third parties*.") (emphasis added); 18 U.S.C. § 2702(a)(2)(B) (exclusively protecting communications held by RCS providers who are "not authorized to access the contents . . . for purposes of providing any services other than storage or computer processing").

Terms of Use).) It is also far from clear, at least with respect to her second account, that Van Rootselaar was a covered "user," which the SCA defines as one "*duly authorized* by the provider" to use the service. 18 U.S.C. § 2510(13)(B) (emphasis added). By OpenAI's own telling, Van Rootselaar was removed from ChatGPT in June 2025 "for violent content in violation of OpenAI's usage policies." (Herrera Decl. Ex. B ¶ 25, Dkt. 76-3.) She was therefore not "duly authorized" to use OpenAI's services after that point, and even if the SCA prohibited disclosure of these chat logs (it does not), it would no longer have covered any further interactions.

But even if the SCA applied here, it would not obligate OpenAI to designate the chat logs as Confidential, or compel the Court to seal them. That's because OpenAI was a party to any communications and therefore *can* "unilaterally consent" (Stmt. at 4) to their disclosure under the plain text of the Act. *See* 18 U.S.C. § 2702(b)(3) ("[P]rovider . . . may divulge the contents of a communication . . . with the lawful consent of the originator *or* an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service") (emphasis added). ChatGPT (and thus OpenAI) was either the originator or addressee of every chat at issue here. The only authority OpenAI cites involves litigants subpoenaing *nonparty* providers for *other people's* communications (*In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012)) or emails held by a provider who was not a sender or recipient of the messages (*Ajemian v. Yahoo!, Inc.*, 478 Mass. 169, 171 (2017)). (Stmt. at 4 & n.3.) Both cases are thus irrelevant here. The SCA provides no basis to seal any portion of the operative complaints.

**Third**, OpenAI's invocation of an amorphous need to "also consider British Columbia privacy law" goes nowhere. (*Id.* at 4–5.) OpenAI identifies no provision of British Columbia's Personal Information Protection Act that compliance with an order of this Court would violate. (*Id.*; *see also* Dkt. 76-3 (*passim*).) In fact, that law permits disclosure of personal information "for the purpose of complying with a subpoena, warrant or order issued or made by a court, person or body with jurisdiction to compel the production of personal information." Personal Information Protection Act, S.B.C. 2003, c. 63, § 18(1)(i) (Can.). Defendants appear to resent the fact that the Province's Office of the Information and Privacy Commissioner ("OIPC") is investigating OpenAI for how it used personal information gleaned from Van Rootselaar's ChatGPT account, while other Provincial

authorities are suing the company for failing to adequately review and report the chats, though there does not seem to be any actual inconsistency there. (Stmt. at 4–5.) However, the "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana,* 447 F.3d at 1179. And in Vancouver, OpenAI has sought to quash the OIPC's investigation as lacking "reasonable grounds," exceeding the Commissioner's jurisdiction, and barred by res judicata. (Dkt. 76-3 ¶¶ 4–10, 53–68.) OpenAI cannot tell the Supreme Court of British Columbia that the OIPC's "assertions" are baseless and tell this Court that they tie its hands.

**Finally**, Defendants conclude their Statement by misstating the governing standard, mistakenly suggesting that "[i]f the Court determines that there is a compelling reason for sealing, it should grant the Administrative Motions to seal Van Rootselaar's ChatGPT communications." (Stmt. at 5.) While it is true that OpenAI must defend the sealing with "compelling reasons supported by specific factual findings," that is only a threshold requirement. *Kamakana,* 447 F.3d at 1178–79 (quoting *Foltz,* 331 F.3d at 1135). "[T]he court must *then* balance the interests of the public and the party seeking sealing." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 789 F. Supp. 3d 760, 764 (N.D. Cal. 2025) (emphasis added). The chats at issue here provide an important record of how OpenAI's product behaved in the lead-up to a school shooting, which is not only a central issue in this case, but a subject of intense public scrutiny in the United States and Canada. An appropriately tailored disclosure of this evidence would promote "the public's understanding of the judicial process and of significant public events." *Valley Broad. Co. v. U.S. Dist. Ct. for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986). The Statement largely ignores these core public interests. But to the extent Defendants acknowledge them, they seem to agree that the chats should (and will eventually be) public, merely demurring that OpenAI is "not in a position to consent to public disclosure." (Stmt. at 2, 5.) As explained above, OpenAI's halfhearted protest is neither persuasive nor relevant to the balancing analysis the Court must undertake here.

In sum, the Court should deny sealing pursuant to Civil L.R. 79-5(f)(6) and order the provisionally redacted portions of the operative complaints filed publicly, subject only to narrowly tailored redactions the parties agree upon or the Court finds justified.

Respectfully submitted,

**INDIVIDUAL PLAINTIFFS,**

Dated: November 9, 2026

By: /s/ *Brandt Silverkorn*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Brandt Silverkorn (SBN 323530)
bsilverkorn@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300

*Attorneys for Individual Plaintiffs*