**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE TUMBLER RIDGE SHOOTING

This Document Relates To: All Related Actions

Lead Case No. 3:26-cv-03701-JSC

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

Judge: Hon. Jacqueline S. Corley

Defendants OpenAI Foundation, OpenAI OpCo, LLC, OpenAI Group PBC, OpenAI Holdings, LLC, and Samuel Altman (collectively, "Defendants") move to dismiss these related actions under Rule 12(b)(6) for failure to state a claim. The Court has considered the parties' submissions, the record, and the arguments presented at the hearing on February 11, 2027. For the reasons set forth below, the motion is **GRANTED**.

***Legal Standard.*** "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a Rule 12(b)(6) motion, Plaintiffs must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action,' and must rise above the mere conceivability or possibility of unlawful conduct." *Id.* at 959–60 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"[F]ederal courts sitting in diversity cases cannot initiate an alteration of California state law." *Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 339 (9th Cir. 2020). Indeed, "[f]ederal courts sitting in diversity must proceed with caution when making pronouncements about state law, and are in a particularly poor position to endorse a policy innovation in a state's law absent an authoritative signal from the legislature or the courts." *Jensen v. U.S. Tennis Ass'n*, No. 23-15757, 2025 WL 707447, at *2 (9th Cir. Mar. 5, 2025) (cleaned up). Likewise, courts should not "extend [foreign] law where [foreign] statutes and case law have not done so." *In re Lyondell Chem. Co.*, 567 B.R. 55, 127 (Bankr. S.D.N.Y. 2017), *aff'd*, 585 B.R. 41 (S.D.N.Y. 2018).

**Tarasoff *Claims (Claim 1 in All Related Cases).*** Plaintiffs' central claim faults OpenAI for not warning Canadian law enforcement about Van Rootselaar before the shooting. This theory fails for multiple reasons under California law.

It is a foundational tort principle that "one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Regents of Univ. of Cal. v. Superior Ct.*, 4 Cal.

5th 607, 619 (2018) (citation omitted). Plaintiffs fail to state a claim under the narrow exception to this general rule recognized in *Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425 (1976). *Tarasoff* creates a special exception to the general no-duty rule for a "doctor or psychotherapist" whose patient makes a specific threat to a "readily identifiable" target. *Id.* at 432, 436. The narrow *Tarasoff* exception has always been grounded in the special diagnostic relationship between a medical professional and a patient. The California Supreme Court explained that "the special relation that arises between a patient and his doctor or psychotherapist" and "the judgment of the therapist in diagnosing emotional disorders" can give rise to an "exception" to the "general rule" that a "person owe[s] no duty to control the conduct of another"—namely, an exception that requires warning the "threatened victim." *Id.* at 435–36, 438–39, 458. The California Legislature has confirmed that the *Tarasoff* exception applies only to psychotherapists and similar medical professionals. *See* Cal. Civ. Code § 43.92; Cal. Evid. Code § 1010. And California courts have explained that because a psychotherapist's duty to warn "is based upon special professional expertise," it "is not extended to nonprofessionals attempting to assist friends or subjects with problems" as a matter of law. *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1457 (1993).

Plaintiffs' *Tarasoff* claims fails as a matter of law because neither Defendants nor ChatGPT are "licensed psychotherapist[s]" under California law. *See Hedlund v. Superior Ct.*, 34 Cal. 3d 695, 704 (1983). And whether people may use ChatGPT "as a therapist," or seek "deeply personal advice" from ChatGPT, as Plaintiffs allege, is legally irrelevant. *Stacey* FAC ¶ 208; *B.C.* FAC ¶¶ 4, 127. The defendant's professional status, not the nature of any specific interaction, is what matters. As a matter of California law, the *Tarasoff* exception does not "extend[] to nonprofessionals attempting to assist friends or subjects with problems." *Koepke*, 18 Cal. App. 4th at 1457; *see also* CACI 507 ("obligation to third parties appears to be limited to healthcare professionals"). The Court, sitting in diversity, "cannot initiate an alteration of California state law." *Perez*, 959 F.3d at 339.

Separately, Plaintiffs' *Tarasoff* claim fails because, given the allegations in the complaints, even a psychotherapist would not have had a tort duty to warn Plaintiffs under California law.

*Tarasoff* requires a psychotherapist to warn the "readily identifiable" target of a patient's imminent violent threat. 17 Cal. 3d at 432. Here, Plaintiffs do not allege that Van Rootselaar ever threatened them or Tumbler Ridge Secondary School.

***Misfeasance Claims (Individual Plaintiffs' Claims 4, 6; British Columbia Plaintiffs' Claim 5).*** Plaintiffs' alternative misfeasance claims that OpenAI's affirmative conduct created or contributed to the risk that Van Rootselaar posed also fail as a matter of California law.

Plaintiffs do not plausibly allege that OpenAI *created* a risk that did not previously exist. As the Ninth Circuit has explained, a misfeasance duty exists under California law where a defendant's "affirmative conduct itself . . . placed plaintiffs in a dangerous position and created a serious risk of harm to which they otherwise would not have been exposed." *Doe v. Uber Techs., Inc.*, No. 22-16562, 2025 WL 80365, at *4 (9th Cir. Jan. 13, 2025) (quoting *Lugtu v. Cal. Highway Patrol,* 26 Cal. 4th 703, 717 (2001) (ellipsis in original)). Plaintiffs do not allege that the risk posed by Van Rootselaar "would simply not have existed without [OpenAI's] own conduct." *Id.* To the contrary, Plaintiffs allege that Van Rootselaar was "a troubled individual with ready access to firearms" and "an admitted history of causing harm to herself and others"; she was "already known to local law enforcement," and "Canadian authorities had visited her residence multiple times in connection with mental health concerns and had temporarily removed firearms from the home." *Stacey* FAC ¶¶ 3, 141; *B.C.* FAC ¶ 196. Plaintiffs also acknowledge that Van Rootselaar was aided and abetted by another person who has been criminally charged for their role in planning and executing the shooting. *Stacey* FAC ¶ 110. These allegations do not support an inference that OpenAI created the risk.

Nor do Plaintiffs plausibly allege that OpenAI *contributed* to an existing risk. California courts repeatedly have rejected, as a matter of law, claims seeking to impose tort liability for allegedly fueling or triggering a third party's existing violent tendencies. *E.g.*, *Wise v. Superior Ct.*, 222 Cal. App. 3d 1008, 1011–12 (1990) (affirming dismissal of negligence claims against the wife of a man who committed a mass shooting, rejecting the theory that the wife had engaged in misfeasance by "set[ting] him off"); *Hansra v. Superior Ct.*, 7 Cal. App. 4th 630 (1992); Ruling on Submitted Matters, *Mata v. Meta Platforms, Inc.*, Case No. 24SMCV02494 (L.A. Super. Ct.

Sept. 5, 2025), slip op. at 18. The Court, sitting in diversity, declines to reach a different conclusion than California courts. *See Perez*, 959 F.3d at 339.

Separately, the Court concludes that no duty should be imposed here for the same reasons that "California courts have declined to find a duty as a matter of law under the *Rowland* factors for claims implicating expression," including claims seeking to impose liability for information and ideas that allegedly influenced a third party to harm themselves or others. *Est. of B.H. v. Netflix, Inc.*, No. 4:21-cv-06561-YGR, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022); *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1021 (2023) (courts must consider under the *Rowland* factors whether "compelling policy considerations" require an "exception[]" to any duty that might otherwise be imposed). The Court, sitting in diversity, will not deviate from the policy determination underlying these California precedents. *See Jensen*, 2025 WL 707447, at *2.

***Aiding and Abetting (Claim 3 in All Related Cases).*** Plaintiffs fail to state a claim for aiding and abetting under California law. Aiding and abetting requires both "actual knowledge of the specific primary wrong," *In re First All. Mortg. Co.*, 471 F.3d 977, 993–95 (9th Cir. 2006), and "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act," *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 641 (2021) (citation omitted).

Plaintiffs do not allege that Defendants had actual knowledge that Van Rootselaar was planning to commit a mass shooting at Tumbler Ridge Secondary School—the "specific primary wrong." *Shamgochian v. Bank of Am., N.A.*, No. F064231/F064480, 2013 WL 1098256, at *9 (Cal. Ct. App. Mar. 18, 2013).

Nor do Plaintiffs allege that Defendants made a "conscious decision" to facilitate Van Rootselaar's specific crime. *George*, 71 Cal. App. 5th at 641.

***Causation (All Claims).*** All Plaintiffs' claims fail as a matter of law for the additional reason that Plaintiffs fail to plead causation—an element of each claim—because Van Rootselaar's mass shooting is a superseding cause and the only legal cause of Plaintiffs' harms.

"[A] criminal act will be deemed a superseding cause unless it involves a particular and foreseeable hazard inflicted upon a member of a foreseeable class." *Kane v. Hartford Accident &*

*Indem. Co.*, 98 Cal. App. 3d 350, 360 (1979). Here, Plaintiffs fail to allege that Van Rootselaar's specific crime, a school shooting, or her specific target, Tumbler Ridge Secondary School, was foreseeable to Defendants.

Separately, Van Rootselaar's intentional criminal conduct is the sole legal cause of Plaintiffs' harms. Independent from the doctrine of superseding cause, courts recognize that intentional criminal conduct by a third party—including mass shootings at schools and elsewhere—is the "predominant" cause of harm such that a defendant other than the criminal cannot be a "substantial factor" or "legal cause." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1170–71 (D. Colo. 2001) (dismissing claims arising out of school shooting); *Steinle v. United States*, 17 F.4th 819, 824 (9th Cir. 2021) (causation "simply too attenuated" under California law due to "chain of events" including "criminal act" (citation omitted)); *Modisette v. Apple Inc.*, 30 Cal.App.5th 136, 154–55 (2018) ("the gap between Apple's design of the iPhone and the . . . injuries" of plaintiffs harmed by a driver who "willingly diverted his attention from the highway" "is too great for the tort system to hold Apple responsible," even if such distracted driving was foreseeable). Here, Van Rootselaar was by far the predominant actor in the commission of her crimes, such that Defendants cannot have proximately caused her mass shooting as a matter of law.

Finally, Plaintiffs fail to allege causation for their failure to warn theories for the independent reason that law enforcement was already aware of the risk posed by Van Rootselaar. A complaint fails to allege causation for failure to warn where "[i]t is apparent from the allegations . . . that a warning sign would have been superfluous." *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1140 (2002). As Plaintiffs allege, Van Rootselaar "was already known to local law enforcement before the attack," and "Canadian authorities had visited her residence multiple times in connection with mental health concerns and . . . had already recognized her as someone whose access to firearms warranted intervention." *Stacey* FAC ¶ 141; *B.C.* FAC ¶ 196.

***Negligent Entrustment (Claim 2 in All Related Cases).*** Plaintiffs' negligent entrustment claim fails because negligent entrustment applies only to "chattel[s]," not an intangible service. *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 115 (1992); Restatement (Second) of Torts

§ 390 (negligent entrustment reaches "[o]ne who supplies . . . a chattel for the use of another"). Courts have held that online services, like ChatGPT, are not "chattels" and therefore cannot give rise to negligent entrustment claims as a matter of law. *E.g.*, *D'Ambrosio v. Rajala*, 783 F. Supp. 3d 1077, 1101 (N.D. Ill. 2025); *Vocational Bike Rentals LLC v. Kitzuma Corp.*, No. 2:24-cv-07105-CAS-MAAx, 2026 WL 42589, at *8 (C.D. Cal. Jan. 6, 2026).

Separately, Plaintiffs do not allege "knowing entrustment." *See Dodge Ctr. v. Superior Ct.*, 199 Cal. App. 3d 332, 338 (1988). Plaintiffs allege that Defendants became aware of Van Rootselaar, and how she was using ChatGPT, in June 2025, when her first account was flagged, reviewed, and deactivated. *See Stacey* FAC ¶ 40; *B.C.* FAC ¶ 23. Deactivating an account is the opposite of entrustment. Plaintiffs further allege that Defendants did not know Van Rootselaar had created or was using a second account until after the shooting. *Stacey* FAC ¶¶ 16–17; *B.C.* FAC ¶ 164. Thus, there was not knowing entrustment of the second account to Van Rootselaar.

***Negligent Undertaking (Individual Plaintiffs' Claim 5; B.C. Government Plaintiffs' Claim 4).*** Plaintiffs' negligent undertaking claim fails for several reasons. First, Plaintiffs fail to plead that OpenAI "undertook to render services to Plaintiffs," an essential element. *Olvera v. Shafer*, No. 2:14-cv-01298-GMN-NJK, 2016 WL 1384785, at *3 (D. Nev. Apr. 7, 2016).

Second, Plaintiffs fail to allege that OpenAI's safety efforts "increased the risk of harm beyond what existed without the undertaking" of such efforts—i.e., that a risk of harm came from the safety efforts themselves, rather than their alleged inadequacy. *Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 83 (2019).

Third, Plaintiffs do not allege reliance on OpenAI's safety efforts. *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 249 (2005).

***Product Liability (Individual Plaintiffs' Claims 7, 8; B.C. Government Plaintiffs' Claims 6, 7).*** Plaintiffs do not state a claim for strict products liability. First, the correct governing law (British Columbia law) does not recognize strict product liability. British Columbia applies negligence principles to product liability claims, including negligent design and failure to warn. *See, e.g.*, *Ding v. Prévost (A Division of Volvo Grp. Can. Inc.)*, 2022 BCSC 215, paras. 205–207, *aff'd* 2024 BCCA 102; *Harrington v. Dow Corning Corp.*, 2000 BCCA 605, para. 122 (Finch JA,

dissenting, but not on this point). Where, as here, the jurisdiction where the injury occurred does not recognize strict product liability, such claims must be dismissed. *E.g.*, *Hughes v. Apple, Inc.*, No. 22-cv-07668-VC, 2024 WL 4828072, at *1–2 (N.D. Cal. Nov. 18, 2024).

Second, even if California law applied, strict product liability applies only to products, not services. ChatGPT is a dynamic online service, not a static tangible "product." *See* Restatement (Third) of Torts: Prods. Liab. § 19; *see also, e.g.*, *Ito v. Google*, No. 24PSCV00061, 2024 WL 7035832, at *5 (Cal. Super. Ct. May 1, 2024) (Google's AI service Bard not a "product").

Third, even if ChatGPT were a "product" under California law, "strict liability law requires that the plaintiff's injury must have been caused by a 'defect' in the defendant's product." *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 347 (2012) (cleaned up). Plaintiffs' theory is that they were injured by Van Rootselaar's reaction to ChatGPT (and subsequent criminal acts), not by a defect in ChatGPT. Such a "reaction"-based theory of product liability is "deeply flawed" and would require extending existing "bystander jurisprudence." *See James v. Meow Media*, 300 F.3d 683, 700 (6th Cir. 2002) (applying Kentucky law).

Fourth, strict product liability claims cannot be based on expressive content, the heart of Plaintiffs' allegations here. "There is no strict liability for books, movies, or other forms of media." *Est. of B.H.*, 2022 WL 551701, at *3; *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991) ("[W]e decline to expand products liability law to embrace the ideas and expression in a book.").

***Negligent Infliction of Emotional Distress (Claim 9 in Certain Individual Plaintiffs' Complaints).*** The claims for negligent infliction of emotional distress fail for the duty and causation reasons explained above. *See Burgess v. Superior Ct.*, 2 Cal. 4th 1064, 1072 (1992).

The negligent infliction of emotional distress claims by Plaintiffs not present at Tumbler Ridge Secondary School fail for the addition reason that, even if virtual bystander claims were viable under California law (which California courts have not held), those Plaintiffs have not alleged contemporaneous perception of the actual "infliction of injuries" on a close relative. *Scherr v. Hilton Hotels Corp.*, 168 Cal. App. 3d 908, 910 (1985).

***Wrongful Death and Survivor Action Claims (Claims 9, 10 in Certain Individual Plaintiffs' Complaints).*** Plaintiffs' "wrongful death and survival claims are derivative of the negligence" and other claims, and "cannot succeed" for the reasons above. *Oh v. Tchrs. Ins. & Annuity Ass'n of Am.*, 53 Cal. App. 5th 71, 82 (2020).

***British Columbia Government Plaintiffs' Damages.*** The negligence and product liability claims by the British Columbia Government Plaintiffs fail for the additional, independent reason that those Plaintiffs seek purely "economic damages." *B.C.* FAC at 1 & ¶ 187. Those damages are barred whether the Court applies California law or British Columbia law.

Those damages are barred by the economic loss rule. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022); *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 398 (2019); *1688782 Ontario Inc. v. Maple Leaf Foods Inc.*, 2020 SCC 35 (CanLII) [2020], at para. 17; *Social Media Cases*, -- Cal. Rptr. 3d --, 2026 WL 3347173, at *6 (Cal. Ct. App. Nov. 5, 2026).

The damages are also barred by the municipal cost recovery rule. *Cnty. of San Luis Obispo v. Abalone All.*, 178 Cal. App. 3d 848, 859 (1986).

In addition, under British Columbian law, certain statutes expressly authorize recovering aggregate healthcare costs in the specific contexts of tobacco, opioid, and vaping harms. *See Tobacco Damages and Health Care Costs Recovery Act*, S.B.C. 2000, c 30; *Opioid Damages and Health Care Costs Recovery Act*, S.B.C. 2018, c 35; *Vaping Product Damages and Health Care Costs Recovery Act*, S.B.C. 2025, c 29. British Columbia can sue under those laws to recover expenditures to address those harms. There is no comparable statute for harms from mass shootings that the British Columbia Government Plaintiffs can invoke here.

***Constitutional Avoidance.*** Dismissal on these state-law grounds is particularly appropriate here because "[a]ttaching . . . tort liability to the ideas and images" allegedly conveyed by ChatGPT would "raise significant constitutional problems under the First Amendment that ought to be avoided." *Meow Media*, 300 F.3d at 695, 699.

* * *

For these reasons, Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is **GRANTED**. Because Plaintiffs' theories of liability fail as a matter of law, and could not be cured by amendment, Plaintiffs' complaints are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DATED: ____________________, 2027

______________________________
HONORABLE JACQUELINE S. CORLEY
UNITED STATES DISTRICT JUDGE