# EXHIBIT A

COURT REGISTRY
AUG 07 2026
DAWSON CREEK, B.C.

Canada, Province of British Columbia

*Form 5.005*
*Court Registry: Dawson Creek*

**PRODUCTION ORDER**
**Issued by Telecommunication that Produces a Writing,**
**Pursuant to Sections 487.014(3) and 487.1(1) of the *Criminal Code***

To: OpenAI OpCo, LLC, and any employee, servant or agent of OpenAI OpCo, LLC

**WHEREAS** it appears on the oath of Constable Jonathan Paquin, a Peace Officer of Prince George, in the Province of British Columbia;

**THAT** there are reasonable grounds to believe that the following offence has been committed, namely:

a. Murder, on or about February 10, 2026, at or near Tumbler Ridge, in the Province of British Columbia, contrary to Section 235 of the *Criminal Code*;

**AND THAT** the following Data is in your possession or control and will afford evidence respecting the commission of the offence:

1. The following ChatGPT account records related to email, [redacted] between [redacted] to February 10, 2026:

   i. Subscriber Information including but not limited to: name, date of birth, phone number, email, and billing information;

   ii. [redacted];

2. The following ChatGPT account records related to email, [redacted] between [redacted] to February 10, 2026:

   i. Subscriber Information including but not limited to: name, date of birth, phone number, email, and billing information;

   ii. [redacted]

**THEREFORE**, you are ordered to:

1. Produce a document that is a copy of the said document and/or data that is in your possession or control when you receive this order; and/or

2. Prepare and produce a document containing the said data specified that is in your possession or control when you receive this order.

3. The document must be produced to Constable Jonathan Paquin within 14 days at 520 North Nechako Road, Prince George, British Columbia, V2K 1A1, jon.paquin@rcmp-grc.gc.ca in the following form: in a legible, readable and/or otherwise accessible and usable form, certified to be a true copy of the data by way of attached affidavit.

**THIS ORDER** is subject to the following conditions:

1. You have the right to apply to revoke or vary this order.

2. If you contravene this order without lawful excuse, you may be subject to a fine, to imprisonment or to both.

3. This data you are ordered to produce, may be produced on or through an electro-magnetic medium.

Issued at 3:37 (Time) p.m., March 6 (Date), 2026, at Burnaby (Place),

in the Province of British Columbia.

GHayes
A Judicial Justice in and for the Province of British Columbia

GHayes, Judicial Justice
Print Name

## IMPORTANT INFORMATION RELATING TO

## PRESERVATION ORDERS (s. 487.013) and PRODUCTION ORDERS (s. 487.014 to s. 487.018)

**Effect of Orders made under s. 487.013 to 487.018**

*Section 487.019(2) Criminal Code provides that:*

The order has effect throughout Canada.

**Application to Revoke or Vary an Order Prohibiting Disclosure**

*Section 487.0191(4) Criminal Code provides that:*

A peace officer or a public officer or a person, financial institution or entity that is subject to an order made under subsection (1) may apply in writing to the justice or judge who made the order – or to a judge in the judicial district where the order was made – to revoke or vary the order.

**Application for Review of Production Order**

*Section 487.0193(1) Criminal Code provides that:*

Before they are required by an order made under any sections 487.014 to 487.018 to produce a document, a person, financial institution or entity may apply in writing to the justice or judge who made the order – or to a judge in the judicial district where the order was made – to revoke or vary the order.

**Application to the Court**

Applications to the court must be made in writing and filed at the Court Registry indicated on the front of this order.

The application may be made only if notice of your intention to apply to review the order, is given to peace officer or public officer named in the order within 30 days after the day on which the order is made.

**Self-Incrimination**

*Section 487.0196 Criminal Code provides that:*

No one is excused from complying with an order made under any of sections 487.014 to 487.018 on the ground that the document that they are required to produce may tend to incriminate them or subject them to a proceeding or penalty. However, no document that an individual is required to prepare may be used or received in evidence against them in a criminal proceeding that is subsequently instituted against them, other than a prosecution for an offence under section 132, 136 or 137.

### Offences

**Section 487.0198 – Preservation or Production Order**

A person, financial institution or entity that contravenes an order made under any of section 487.013 to 487.018 without lawful excuse is guilty of an offence punishable on summary conviction and is liable to a fine of not more than $250,000 or to imprisonment for a term of not more than two years less a day, or to both.

**Section 487.0199 – Destruction of Preserved Data**

A person who contravenes section 487.0194 without lawful excuse is guilty of an offence punishable on summary conviction.

*Form 5.004*

Canada: Province of British Columbia

IN THE MATTER of an Application for a Production Order
by telecommunication that produces a writing,
pursuant to Sections 487.014(2) and 487.1(1) of the *Criminal Code*

and

IN THE MATTER of an Application for an Order to Seal the Material
in Support of and Resulting from this Application by telecommunication that produces a writing, Pursuant to Sections 487.3 and 487.1(1) of the *Criminal Code*

Table of Contents

Information to Obtain ........ 6
OFFENCE: ........ 6
PURPOSE OF APPLICATION: ........ 6
Investigational Summary ........ 7
Definitions & Abbreviations ........ 8
Preliminary Information ........ 10
Time Zones Converted ........ 10
Family Names ........ 10
Statements ........ 12
Details of the Investigation ........ 12
Tumbler Ridge file 2026-73 ........ 12
[redacted] ........ 12
........ 13
........ 13
........ 13
........ 14
........ 14
........ 15
........ 15
........ 15
Police Member Response ........ 15
Tumbler Ridge file 2026-75 – [redacted] ........ 17
Tumbler Ridge file 2026-74 – Erratic Driver ........ 18
Initial Response to Tumbler Ridge Secondary School ........ 19
Transition Briefing Information ........ 19
Cst Arien FLIKWEET ........ 21
Cst Ryan TURPLE ........ 21
Cst Kaylee RADFORD ........ 22
Initial Response to [redacted] ........ 23
Victims and Suspect Identified ........ 23
Autopsies ........ 24
[redacted] ........ 24

[redacted] ........ 24
........ 25
........ 25
........ 25
........ 25
Jesse VAN ROOTSELAAR ........ 25
[redacted] ........ 26
........ 26
Tumbler Ridge Secondary School Crime Scene Examination ........ 26
[redacted] ........ 27
[redacted] ........ 27
[redacted] ........ 27
[redacted] ........ 28
[redacted] ........ 28
[redacted] – Jesse Located Deceased ........ 29
[redacted] ........ 29
Hyundai Palisade Crime Scene Examination ........ 30
[redacted] Crime Scene Examination ........ 31
Cpl LYNDE Starts Search ........ 31
Evidence [redacted] ........ 32
Evidence Located [redacted] ........ 34
Evidence Located [redacted] ........ 36
Evidence Located [redacted] ........ 37
Evidence Seized ........ 37
Police Queries ........ 38
Hyundai Palisade ........ 38
[redacted] ........ 38
Jesse PRIME Review ........ 39
CCTV - Tumbler Ridge Secondary School ........ 40
CCTV Canvass ........ 45
[redacted] ........ 45
[redacted] ........ 45

Statements [redacted] ........ 46
[redacted] ........ 46
........ 51
........ 55
........ 56
........ 57
Statements from [redacted] ........ 59
[redacted] ........ 59
........ 60
........ 60
........ 61
Statements from [redacted] ........ 62
[redacted] ........ 62
........ 62
........ 63
........ 64
........ 65
........ 65
........ 66
........ 67
........ 68
........ 68
Statements [redacted] ........ 69
[redacted] ........ 69
........ 70
Social Media ........ 72
Jesse's Social Media Accounts ........ 72
[redacted] ........ 73
Statements from [redacted] ........ 75
[redacted] ........ 75
........ 77
........ 77

OpenAI/Chat GPT Disclosure from FBI ........ 78
[redacted] ........ 79
[redacted] ........ 80
Electronic Devices ........ 80
[redacted] ........ 80
Jesse's iPhone ........ 81
Firearms Tracing ........ 82
[redacted] Firearms ........ 82
TRSS Firearms ........ 83
Justification for Production Order ........ 84
Grounds the Named Offence Committed ........ 84
Grounds the Documents will Afford Evidence ........ 85
OpenAI OpCo, LLC Can Produce Data ........ 86
OpenAI OpCo, LLC Not Under Investigation ........ 87
Terms and Conditions – Production Order ........ 87
Sealing Order Justification ........ 87

**Information to Obtain**

I, Constable Jonathan Paquin, a member of the Royal Canadian Mounted Police in the Province of British Columbia, make oath and say as follows:

1. I am a Peace Officer and have been a member of the Royal Canadian Mounted Police ("RCMP"), since November 2020. I am a constable with the North District Major Crime Unit and have been attached to that section since July 2025.

2. I have personal knowledge of the matters and facts to which I depose in this Information to Obtain, save and except where stated to be on information and belief. I believe the facts and matters within my personal knowledge to be true. As to the facts based on information and belief, I believe them to be true.

<u>**OFFENCE:**</u>

3. I have reasonable grounds to believe that the following offence has been committed:

   a. Murder, on or about February 10, 2026, at or near Tumbler Ridge, in the Province of British Columbia, contrary to Section 235 of the *Criminal Code*;

   (the "Named Offence")

<u>**PURPOSE OF APPLICATION:**</u>

4. This Information to Obtain is sworn in support of a Judicial Authorization for a:

   a. <u>**Production Order**</u> pursuant to Sections 487.014 and 487.1(1) of the *Criminal Code*. I have reasonable grounds to believe the following documents or data in the possession or control of OpenAI OpCo, LLC will afford evidence respecting the commission of the Named Offence:

i. The following ChataGPT account records related to email, [redacted], between [redacted] to February 10, 2026:

1. Subscriber Information including but not limited to: name, date of birth, phone number, email, and billing information;
2. [redacted];

ii. The following ChatGPT account records related to email, [redacted], between [redacted] to February [redacted]

1. Subscriber Information including but not limited to: name, date of birth, phone number, email, and billing information;
2. [redacted]

(the "Data")

b. <u>**Sealing Order**</u> pursuant to Sections 487.3 and 487.1(1) of the *Criminal Code* to prohibit access by interested parties or members of the public to all Court Records relating to the proposed Production Order.

## Investigational Summary

5. On February 10, 2026, at [redacted] Tumbler Ridge RCMP responded to an active shooter at the Tumbler Ridge Secondary School. Police responded and located six deceased victims inside the school along with spent shell casings throughout the affected area of the school. Additionally, the shooter, who has been identified as Jesse VAN ROOTSELAAR (Jesse) was also located deceased inside the school with self-inflicted gunshot wounds. [redacted]

6. On February 10, 2026, at [redacted] Tumbler Ridge RCMP received another complaint about an SUV that had earlier been driving erratically from [redacted] which is the residence of Jesse and his family. The SUV was confirmed to be a Hyundai Palisade registered to Jesse's mother, [redacted] Jesse drove the vehicle from the residence to Tumbler Ridge Secondary School.

7. On February 10, 2026, at [redacted] Tumbler Ridge RCMP received a complaint that [redacted] were located deceased inside [redacted] Police cleared this residence and located both deceased along with spent shotgun shells and a shotgun;

8. The investigation has revealed that Jesse had mental health problems and was fascinated by firearms, [redacted]

9. OpenAI voluntarily disclosed to police that they located two ChatGPT accounts they believed belonged to the shooter of Tumbler Ridge and that the accounts contain relevant information to this investigation. This application is sworn in support of a Production Order to obtain the data from OpenAI and a Sealing Order.

## Definitions & Abbreviations

10. All the locations referred to in this Information to Obtain are in the Province of British Columbia ("BC"), unless otherwise stated.

11. All motor vehicle licence plate numbers are BC motor vehicle licence plate ("BCLP") numbers unless otherwise stated.

12. Within this Information to Obtain, I have learned information from police computer based data systems which include:

a. **The Canadian Police Information Centre ("CPIC")** contains information such as missing and wanted persons, stolen property, and criminal records of individuals. CPIC also accesses records of motor vehicle branches of the various Provinces across Canada including driver's licence information, driving records and motor vehicles registered to individuals; and,

b. **Police Records Information Management Environment ("PRIME")** contains information in relation to police investigations, the originating agency, and complete police investigational reports, along with specific entity particulars such as birth dates, telephone numbers, addresses and persons associated to the event.

13. [redacted]

14. [redacted]

15. **Forensic Identification Services ("FIS")** is a support unit in the RCMP consisting of members that are specially trained to identify, document, preserve, and collect evidence at crime scenes, including physical, biological, and trace evidence;

16. **Digital Forensics Services ("DFS")** is an RCMP unit responsible for providing digital forensics support to all RCMP investigative units in British Columbia. The unit is mainly comprised of digital forensics examiners and digital evidence support technicians.

17. **Tumbler Ridge Secondary School ("TRSS")** is located at 180 Southgate Street, Tumbler Ridge;

18. **Federal Bureau of Investigation ("FBI")** is domestic intelligence and security service and is the principal federal law enforcement agency in the United States of America;

19. **OpenAI** is an Artificial Intelligence research and deployment company located in San Francisco, California;

20. **ChatGPT** is an artificial intelligence product/chatbot developed by OpenAI.

21. I have added comments to explain or link information and to state my belief. Where these comments and beliefs are added, I have defined them in square brackets [ ].

**Preliminary Information**

**Time Zones Converted**

22. Tumbler Ridge is currently observing the time zone Mountain Standard Time (MST). However, the initial call and the subsequent PRIME Call Detail Summary's were received and information obtained in time zone Pacific Standard Time (PST), simply because the RCMP Operations Communication Center is located within Prince George and E-Comm is located in Vancouver. [redacted]. For clarity, I will refer to the times in this ITO in MST, unless specifically stated.

**Family Names**

23. In this investigation the suspect and members of their family have multiple different last names and are often referred to by others with different last names than what

investigators have determined to be their legal name. Additionally, some people involved in this investigation are transgendered and therefore, use a different name other than their legal name. For clarity and understanding, I will list the legal names and their associated aliases here, which will be explained as they come forward in this ITO:

a. Jesse VAN ROOTSELAAR, also known as:

   i. Jesse VANROOTSELAAR;

   ii. Jesse STRANG;

   iii. Jesse JACOBS;

[redacted]

**Statements**

24. In this investigation, approximately 80 statements have been taken from [redacted], teachers, students, first responders, and community members. Some statements outline firsthand observations of the school shooting or [redacted] observations, while many provide peripheral information or observations, or background information on the suspect, Jesse. I understand my requirement as an affiant to be full, frank, and fair, however given the number of statements taken, and many of the witness statements outlining the same information, not all will be listed in this ITO. Additionally, the shooting at the TRSS was captured on CCTV [redacted]. I believe that this sufficiently outlines what occurred at TRSS.

## Details of the Investigation

**Tumbler Ridge file 2026-73**

25. On February 10, 2026 at [redacted] Tumbler Ridge RCMP received a Shots Fired report at TRSS. I read the PRIME Detailed Call Summary for this file and learned that multiple calls were received for this incident and many callers did not provide a name, or if they did provide a name the spelling listed by the caller is possibly incorrect. Therefore, I will refer to them as Caller and assign a number to each of them listed. Specifically, I learned:

[redacted]

[redacted]

[redacted]

[redacted]

Police Member Response

26. The same PRIME Detailed Call Summary for this file also detailed the following police response:

a. At [redacted] Cst Nick GACHTER (Cst GACHTER) arrived on scene;

[redacted]

b. At [redacted], Cst GACHTER reported hearing shots;

c. At [redacted] Cst GACHTER reported shots being fired at police;

d. At [redacted] Sgt Bill HUGHES (Sgt HUGHES) reported that it was a lone shooter on the second floor;

e. At [redacted] Sgt HUGHES reported that there was one deceased person in the stairwell and five victims in the library, one of which may be deceased;

f. At [redacted] Cst GACHTER reported that the black SUV that was reported on Tumber Ridge File 2026-74 [erratic driver] was out front with the doors open;

g. At [redacted] Cst GACHTER reported that [redacted]

h. At [redacted] Sgt HUGHES reported that [redacted];

i. At [redacted] Sgt HUGHES reported that [redacted];

j. At [redacted] Critical Incident Commander, Inspector Chris RIDDLE (Insp RIDDLE) reported that a possible suspect was Jesse JACOBS who was a male that identified as a female. Insp RIDDLE stated that this was the eldest child in the STRAIN/JACOB family, and that they were obsessed with guns. [Later in this ITO it will be outlined that the suspect is Jesse, who is the same person as Jesse JACOBS.];

k. At [redacted] Insp RIDDLE reported that a possible second shooter was Jesse VAN ROOTSELAAR (Jesse) Insp RIDDLE also stated that Jesse was supposed to reside at the residence where the two deceased were located. Insp RIDDLE described Jesse as having [redacted]

[redacted] and that they were not a student at the school;

l. At [redacted], Sgt HUGHES reported locating the shooter who was deceased [redacted]

m. At [redacted] Cpl Bayden AUSTRING (Cpl AUSTRING) reported that he was with a shooter, who had a self-inflicted gunshot wound [redacted]. Cpl AUSTRING further reported that [redacted] and that the deceased person had a serious [redacted] wound, but matched the description of the suspect [later in this ITO I will outline that this deceased person was identified as the suspect, Jesse]

n. At [redacted] Insp RIDDLE reported that investigating members looked at CCTV video inside the school and confirmed that only one suspect entered the school and that there was only one shooter. Insp RIDDLE provided the description of the shooter [redacted]

o. At [redacted] Emergency Response Team (ERT) member Cpl John ROBB (Cpl ROBB) reported that the suspect was clearly deceased, and that the suspect matched the description provided. Cpl ROBB also reported that [redacted].

**<u>Tumbler Ridge file 2026-75 –</u>** [redacted]

27. On February 10, 2026 at [redacted] Tumbler Ridge RCMP received a [redacted] report from [redacted], [redacted] at [redacted]. I read the PRIME Detailed Call Summary for this file and learned the following:

a. [redacted]

b. [redacted]

c. [redacted]

[redacted]

**Tumbler Ridge file 2026-74 – Erratic Driver**

28. On February 10, 2026 at [redacted] Tumbler Ridge RCMP received a Traffic Incident report from [redacted] I have read the PRIME Detailed Call Summary for this file and learned the following:

a. [redacted] reported an erratic driver at [redacted] [redacted] [there was a [redacted] time delay to this report, therefore I believe [redacted] witnessed this at approximately [redacted]

b. [redacted] reported that a black Suburban that had "side rear"' damage where it had backed into a snowbank, left driving quickly and erratically. [redacted] [redacted] thought the black Suburban left from [redacted]

c. [redacted] reported that the driver was the oldest son of [redacted]

d. [redacted] reported that a possible name for the male was "Steezy" and that the male dresses like a female;

e. [redacted]) advised that there were two dead bodies and shotgun shells on the floor;

f. [redacted] thought that the eldest son was armed and had left, and that the mother and son were dead;

g. The call taker told [redacted] to leave the scene untouched, close the door, and to return to their residence and police members would follow up with them.

[Later in this ITO, I will outline that the black Suburban was identified as [redacted] green 2023 Hyundai Palisade, and that it was driven by Jesse from their residence at [redacted] to TRSS, where the school shooting began.]

**<u>Initial Response to Tumbler Ridge Secondary School</u>**

<u>Transition Briefing Information</u>

29. On February 10, 2026 at 9:48 PM I was in a transition briefing over the phone. I also reviewed the briefing minutes authored by Cst Kate MONTGOMERY (Cst MONTGOMERY). From being in the briefing and reading Cst MONTGOMERY's minutes I have learned the following:

a. Inspector Robert LAKE (Insp LAKE) reported:

i. Sgt HUGHES and two other members responded to the scene and entered to find the location of the gunshots;

ii. Police were shot at by the suspect which caused them to hold while being shot at;

b. Sgt Wahnese ANTONIONI-STEVENS of Chetwynd RCMP (Sgt ANTONIONI-STEVENS) reported that:

i. Herself and Cst SLAYTER went to the school and when they entered they saw a number of people around the school;

ii. She observed a young boy apparently deceased on the stairs with a phone off to the side;

iii. Members cleared the room to the left of the main staircase;

iv. A female was deceased near the table in the library;

v. A deceased person [redacted] was located [redacted], Cpl AUSTRING secured this scene;

vi. Once the school was cleared she transitioned to getting staff and kids to a secure area;

c. Cpl AUSTRING of Chetwynd RCMP reported that:

i. He went to the school and observed the suspect [redacted]

ii. [redacted];

iii. [redacted]

d. Cst Denys MINIALENKO (Cst MINIALENKO) of North District General Investigative Services (NDGIS) arrived on scene at approximately 4:00 PM. Cst MINIALENKO reported that:

i. He went to the high school and saw a grey Hyundai Palisade parked at the front entrance. The vehicle was running and the driver's door was unlocked;

ii. The vehicle had BCLP# [redacted] attached and he observed [redacted] [this license plate is correct and is later identified as BCLP# [redacted]

Cst Arien FLIKWEET

30. On February 10, 2026, Cst Arien FLIKWEERT of BC Highway Patrol responded to TRSS from Fort St John. I have read Cst FLIKWEERT's report and I have learned the following:

a. On arrival, Cst FLIKWEERT, along with Cst Adam BAKER, Cst Kevin JENKINS, Cst Ryan TURPLE, and Cst Curtis QUANSTROM, entered the school and were met by Sgt HUGHES on the second floor;

b. Cst FLIKWEERET and the others cleared rooms and located several of the deceased victims, and observed blood, casings, and bullets throughout;

c. Cst BAKER checked victims for signs of life but none were found;

d. [redacted] the shooter [Jesse] with massive [redacted] trauma from an apparent self-inflicted gun shot wound [redacted]

Cst Ryan TURPLE

31. On February 10, 2026, Cst Ryan TURPLE (Cst TURPLE) of BC Highway Patrol responded to TRSS from Fort St John. I have read Cst TURPLE's report and I have learned the following:

a. At approximately [redacted], Cst TURPLE along with Cst BAKER, Cst JENKINS, Cst FLIKWEERT, and Cst QUANSTROM entered TRSS;

b. Cst TURPLE located deceased victims in the library;

c. [redacted]

d. [redacted]

e. The suspected shooter was located [redacted] and appeared to have a self-inflicted gunshot wound to their [redacted]

f. [redacted]

g. Cst TURPLE and others cleared the remainder of the school locating other victims and rescuing other students.

<u>Cst Kaylee RADFORD</u>

32. On February 10, 2026, Cst Kaylee RADFORD spoke with [redacted] I have read Cst RADFORD's report and I have learned:

[redacted]

**Initial Response to [redacted]**

33. On February 10, 2026 at 9:48 PM I was in a transition briefing over the phone. I also have reviewed the briefing minutes authored by Cst Kate MONTGOMERY (Cst MONTGOMERY). From being in the briefing and reading Cst MONTGOMERY's minutes I have learned the following:

   a. Cpl AUSTRING and another member attended [redacted] where they located an older female [redacted] and a younger person [redacted] deceased [redacted];

   b. Cpl AUSTRING and the other member observed an unloaded shotgun and a pellet gun [redacted];

   c. Cpl Mike SNOW (Cpl SNOW) of the K Division (Alberta) ERT and other ERT members re-attended [redacted] in order to conduct a secondary search and ensure that it was clear and safe;

   d. Cpl SNOW and his team located an older female and a youth person [redacted]. Insecure firearms were observed inside the residence;

**Victims and Suspect Identified**

34. On February 11, 2026, the victims and suspect were identified by police. I read Cpl Mike WILLIAMS report and learned the following:

   a. Deceased Victim #1 – [redacted] was in the [redacted];

   b. Deceased Victim #2 – [redacted] was in the [redacted]

   c. Deceased Victim #3 – [redacted] was located in the [redacted];

   d. Deceased Victim #4 – [redacted] was in the [redacted]

e. Deceased Victim #5 – [redacted] was in [redacted]

f. Deceased Victim #6 – [redacted] was located [redacted];

g. Injured Victim – [redacted]

h. Injured Victim – [redacted]

i. Jesse [the suspect] was in TRSS [redacted] [deceased];

j. Deceased Victim #7 – [redacted] was located at [redacted] and was the [redacted]

k. Deceased Victim #8 – [redacted] was located at [redacted] and was the [redacted]

**Autopsies**

[redacted]

35. On February 12, 2026, Cpl Benedict CHEN attended the autopsy of [redacted] at Surrey Memorial Hospital completed by Dr. Eric BOL (Dr BOL). I have read Cpl CHEN's report and I have learned that the preliminary cause of death was [redacted]

[redacted]

36. On February 13, 2026, Cpl Inderjeet SANDHU (Cpl SANDHU) attended the autopsy of [redacted] at the Surrey Memorial Hospital completed by Dr. BOL. I have read Cpl SANDHU's report and I have learned that the [redacted].

[redacted]

37. On February 13, 2026, Cpl Jennifer PAUL (Cpl PAUL) attended the autopsy of [redacted] at the Surrey Memorial Hospital completed by Dr. BOL. I have read Cpl PAUL's report and I have learned that [redacted].

[redacted]

38. On February 13, 2026, Cst Richard DWARIKA (Cst DWARIKA) attended the autopsy of [redacted] at the Surrey Memorial Hospital. I have read Cst DWARIKA's report and I have learned that the preliminary cause of death was [redacted].

[redacted]

39. On February 12, 2026, Cpl Harpreet KOMBO (Cpl KOMBO), attended the autopsy of [redacted] at completed by Dr. BOL at Surrey Memorial Hospital. I have read Cpl KOMBO's report and I have learned the preliminary cause of death was [redacted].

[redacted]

40. On February 12, 2026, Cpl KOMBO attended the autopsy of [redacted] completed by Dr. BOL at Surrey Memorial Hospital. I have read Cpl KOMBO's report and I have learned that the cause of death was [redacted]

Jesse VAN ROOTSELAAR

41. On February 13, 2026, Cst Leslie SMITH (Cst SMITH) attended the autopsy of Jesse at the Royal Jubilee Hospital completed by Dr Elizabeth BROOKS-LIM. I have read Cst SMITH's report and learned the Dr BROOKS-LIM's preliminary cause of death was a gunshot wound to [redacted], indicative of a self-inflicted gunshot wound.

[redacted]

42. On February 14, 2026, Cst David STENGERT (Cst STENGERT) attended the autopsy of [redacted] at the Surrey Memorial Hospital completed by Dr BOL. I have read Cst STENGERT's report and learned that Dr. BOL's preliminary cause of death was [redacted]

[redacted]

43. On February 14, 2026, Cst David STENGERT attended the autopsy of [redacted] at the Surrey Memorial Hospital completed by Dr BOL. I have read Cst STENGERT's report and learned that Dr. BOL's preliminary cause of death was [redacted].

**<u>Tumbler Ridge Secondary School Crime Scene Examination</u>**

44. Between February 10, 2026 and February 14, 2026, police searched and examined the scene at TRSS. The crime scene examination included three North District Major Crime Unit members as well as ten FIS members. I have read Cpl RAMBALLY's reports on the walk through the crime scene by ERT when it was handed over to investigators and the crime scene examination and I have learned:

   a. Cpl RAMBALLY viewed the CCTV from TRSS that aided in the crime scene examination [redacted]

   b. Cpl RAMBALLY, Cpl SMITH, and Cpl LYNDE viewed portions of Sgt HUGHES' body worn camera video [redacted]

[redacted]

[redacted]

[redacted] – Jesse Located Deceased

v. Jesse was discovered deceased [redacted]. Jesse had [redacted]

[redacted]

**Hyundai Palisade Crime Scene Examination**

46. On February 11, 2026, I applied for a Search Warrant pursuant to Sections 487 and 487.1 of the *Criminal Code* the Hyundai Palisade. This Search Warrant was granted by Judicial Justice C. ROBERTS.

47. Cpl RAMBALLY executed the search warrant on the Hyundai Palisade. I have read her reports on the search warrant execution and seizure made and I have learned:

   a. Cpl RAMBALLY executed the search warrant on February 11, 2026 at 4:00 PM;

   b. On February 12, 2026, Cpl SMITH [redacted].

[redacted] Crime Scene Examination

48. On February 11, 2026, I applied for a Search Warrant pursuant to Sections 487 and 487.1 of the *Criminal Code* for [redacted] This Search Warrant was granted by Judicial Justice C. ROBERTS.

49. On February 15, 2026, I received an email from Cpl LYNDE that outlined several notable events from the search at [redacted] I have read the email and I learned that on February 11, 2026 at 8:15 PM, Cpl SMITH executed the search warrant at [redacted] [this search was then paused].

Cpl LYNDE Starts Search

50. On February 12, 2026 at 6:51 PM, I attended an investigative briefing and read the updated briefing minutes authored by Cst MONTGOMERY. In this briefing, Crime Scene Team Leader, Cpl LYNDE reported the following regarding the search of [redacted]

a. The residence was a single split-level family residence;

b. [redacted] there was a deceased adult female [redacted]

c. [redacted]

d. [redacted] there was a deceased male child [redacted]

e. [redacted]

f. An unloaded shotgun was located [redacted]

g. [redacted], one laptop [redacted]

[I have spoken with Cpl LYNDE about this search and clarified that she started the search of [redacted] with FIS members, and also completed body removal during this time. The search and processing of the scene continued the next day as well.]

Evidence [redacted]

51. On February 13, 2026 Cpl RAMBALLY and Cpl SMITH led the search of [redacted] that involved several North District Major Crime Unit members and FIS.I have read Cpl RAMBALLY's report and I have learned that Cpl LYNDE showed Cpl RAMBALLY the items located the previous day. This included items located [redacted]:

[redacted]

e. [redacted] shotgun [redacted];

[redacted]

52. On February 13, 2026, Cst PEDDLE assisted in the search at [redacted] I have read Cst PEDDLE's report and I have learned:

a. Biologicial evidence was located [redacted]

[redacted]

c. Several documents supporting residency for Jesse, [redacted] [redacted] were observed;

[redacted]

53. On February 13, 2026, Cst POLACK assisted in the search of [redacted] I have read his report and I have learned that he located upstairs:

a. Documents supporting residency were observed:

i. Bills in [redacted] name;

[redacted]

54. On February 13, 2026, Cst MCDONALD assisted in the search of [redacted] [redacted] I have read Cst MCDONALD's report and I learned that while searching

[redacted]

Evidence Located [redacted]

55. On February 15, 2026, I received an email from Cpl LYNDE that outlined several notable events from the search at [redacted] I have read the email and I have learned that on February 13, 2026, Cpl SMITH and Cpl RAMBALLY led a search team at the residence where:

a. [redacted] of the residence, where multiple electronic devices were located, [redacted];

b. In [redacted] Cpl SMITH located the following:

i. A Sony Handy cam;

ii. A black iPhone with a cracked screen inside a black case;

iii. A purple Aocwei laptop on the bed;

iv. A Macbook Air laptop;

v. An SD card [redacted];

c. Inside [redacted] Cst PEDDLE located a purple digital camera with an SD card inside it on the ledge behind a mirror. This was designated as Exhibit I-38;

d. On February 13, 2026, at 5:51 PM, Cpl SMITH seized all exhibits that had been located at [redacted] [several others items were seized that are not listed here as they are not relevant to this ITO].

[redacted]

[redacted]

i. A camera and iPhone.

58. On February 13, 2026, Cst MCDONALD assisted in the search of [redacted] I have read Cst MCDONALD's report and I learned:

[redacted]

Evidence Located [redacted]

59. On February 13, 2026, Cst RAMBALLY led the search at [redacted] with Cpl SMITH. I have read Cpl RAMBALLY's report and I learned that [redacted]

60. On February 13, 2026, Cst YU assisted in the search of [redacted] I have read Cst YU's report and I learned:

[redacted]

Evidence Located [redacted]

61. On February 13, 2026, Cst POLACK assisted in the search of [redacted] I have read his report and I have learned that [redacted]

Evidence Seized

62. Between February 12, 2026 and February 13, 2026, [redacted] exhibits were seized during the search of [redacted] I have read Cpl RAMBALLY's report and I have learned:

a. On February 12, 2026, Cpl LYNDE seized [redacted]

b. On February 13, 2026, Cpl SMITH seized the remaining exhibits.

63. On February 14, 2026 at 08:17 AM I called in by phone to an investigative briefing and I read the updated briefing minutes authored by Cst MONTGOMERY. In this briefing, Crime Scene Team Leader, Cpl LYNDE reported the following seizures from [redacted]:

[redacted]

j. Laptop, cameras, and a cell phone;

[redacted]

**Police Queries**

Hyundai Palisade

64. On February 10, 2026 I queried BCLP# [redacted] through CPIC and I learned the following:

a. The BCLP was attached to a green 2023 Hyundai Palisade [which I know to be a SUV, and the investigation has determined this to be the vehicle JESSE used to drive to TRSS];

b. The Registered Owner was listed as [redacted]

c. [redacted] BC Drivers License, listed a previous name of [redacted]

65. On February 11, 2026, I spoke with Cst MINIALENKO on the phone where I learned that the correct plate number for the Hyunda Palisade he observed was BCLP# [redacted]

[redacted]

66. On February 10, 2026, I queried [redacted] in PRIME in order to obtain the [redacted]

a. [redacted]

b. [redacted]

c. Jesse VAN ROOTSELAAR who appears to be the oldest;

d. [redacted],

e. [redacted].

[redacted]

Jesse PRIME Review

68. On February 19, 2026, I reviewed PRIME history for Jesse and I learned the following:

a. Jesse was carded to 12 PRIME files, [redacted]

b. Tumbler Ridge RCMP file [redacted] On April 7, 2025, [redacted]

c. Tumbler Ridge RCMP file [redacted], On April 2, 2025, [redacted]

d. Tumbler Ridge RCMP file [redacted], on December 17, 2024, [redacted]

e. Tumbler Ridge RCMP file [redacted], on December 16, 2024, [redacted]

f. Tumbler Ridge RCMP file [redacted], on December 6, 2024 [redacted]

g. [redacted]

h. [redacted]

i. Tumbler Ridge RCMP file [redacted], on August 5, 2018, [redacted]

j. Tumbler Ridge RCMP file [redacted] on April 16, 2018 [redacted]

**<u>CCTV - Tumbler Ridge Secondary School</u>**

69. On February 11, 2026, Cst Drew RIVERS collected CCTV from TRSS. I have read Cst RIVERS report and I have learned:

[redacted]

70. On February 12, 2026, Cst RIVERS collected CCTV from a system that had been located [redacted]. I have read Cst RIVERS report and I have learned:

[redacted]

71. On February 18, 2026, I watched CCTV from TRSS [redacted]

[redacted]

[redacted]

[redacted]

**CCTV Canvass**

[redacted]

[redacted]

**Statements from [redacted]**

[redacted]

74. On February 11, 2026, Cst Heather PEDDLE (Cst PEDDLE) and Cpl Sarah SCHUCK (Cpl SHUCK) took a statement from [redacted]. I have read Cst PEDDLE's and Cpl SCHUCK's reports on this statement and I have learned the following:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

75. On February 12, 2026 at 12:31 PM, Cst PEDDLE took a witness statement from [redacted], while Cpl Sarah SCHUCK monitored the statement. I read the monitor's notes of the statement and I learned the following:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

76. On February 12, 2026, Cst Terry LOTT (Cst LOTT) took a statement from [redacted] I read Cst MCDONALD's summary report of the statement and learned the following:

[redacted]

[redacted]

77. On February 12, 2026, Cst POLACK took a witness statement from [redacted]. I read Cst POLACK's summary report of the statement and learned the following:

[redacted]

[redacted]

[redacted]

78. On February 12, 2026, Cst Chris VILLENEUVE took a statement from [redacted] I have read Cst VILLENEUVE's report summary of the statement and I have learned the following:

[redacted]

[redacted]

[redacted]

**Statements from [redacted]**

[redacted]

79. On February 11, 2026, Cst Matt YU took a witness statement from [redacted]"

[redacted]

[redacted]

[redacted]

[redacted]

80. On February 11, 2026, Cst YU took a witness statement from [redacted]. I read Cst YU's summary report and learned the following:

[redacted]

[redacted]

81. On February 11, 2026, Cst Aaron JAHED (Cst JAHED) took a witness statement from [redacted]. I have read Cst JAHED's report summary of the statement and I have learned the following:

[redacted]

[redacted]

82. On February 11, 2026, Cst Alexander KWON and Cpl Matt RUTTEMAN took a statement from [redacted]). I have read the summary report of Cst KWON and I have learned the following:

[redacted]

**Statements** [redacted]

[redacted]

83. On February 12, 2025, Cst Paul YI (Cst YI) and Sgt Shane PARSONS (Sgt PARSONS) took a statement from [redacted]). I read Cst YI's summary report of the statement and learned the following:

[redacted]

[redacted]

84. On February 11, 2026, Cst YI took a witness statement from [redacted]. I have read Cst YI's summary report of the statement and I learned the following:

[redacted]

[redacted]

[redacted]

85. On February 11, 2026, Sgt PARSONS and Cst YI took a statement from [redacted]. I read Sgt PARSONS' summary report of the statement and I learned the following:

[redacted]

[redacted]

[redacted]

86. On February 11, 2026, Cst Matt SUTHERLAND (Cst SUTHERLAND) took a witness statement from [redacted] I read Cst SUTHERLAND's summary report of the statement and learned the following:

[redacted]

[redacted]

87. On February 11, 2026, Cst SUTHERLAND took a witness statement from [redacted] I have read Cst SUTHERLAND's summary report and I have learned the following:

[redacted]

[redacted]

88. On February 11, 2026, Cpl Ryan COP (Cpl COP) took a witness statement from [redacted] I have read Cpl COP's summary report of the statement and I learned the following:

[redacted]

[redacted]

[redacted]

89. On February 13, 2026, Cst Chris VILLENEUVE and Cst SUTHERLAND took a statement from [redacted] I read Cst VILLENUEVE's report summary of the statement and learned the following:

[redacted]

[redacted]

[redacted]

90. On February 12, 2026, Cst YU took a statement from [redacted]). I have read Cst YU's summary report of the statement and I have learned the following:

[redacted]

[redacted]

[redacted]

91. On February 12, 2026, Cpl RUTTEMAN and Cst KWON took a witness statement from [redacted] I have read Cpl RUTTEMAN's summary report of the statement, and I learned the following:

[redacted]

[redacted]

92. On February 11, 2026, Cst VILLENEUVE and Cst POLACK took a statement from [redacted] I have read Cst VILLENEUEVE's report summary of the statement and I have learned the following:

[redacted]

[redacted]

**Statements from [redacted]**

[redacted]

93. On February 11, 2026 and February 12, 2026, Cst YU and Cst MCDONALD took a witness statements from [redacted]. I have read Cst YU's summary reports of both statements and I learned the following:

[redacted]

[redacted]

94. On February 11, 2026, [redacted]. Cpl Aaron WIDDIS (Cpl WIDDIS) subsequently took a witness statement from [redacted]. I have read Cpl WIDDIS' summary report and I have learned the following:

[redacted]

[redacted]

95. I have also read the report of Cst Kevin HOPSKINSON (Cst HOPKINSON) who monitored [redacted] statement with Cpl WIDDIS. I learned [redacted] also said the following:

[redacted]

[redacted]

## Social Media

**Jesse's Social Media Accounts**

[redacted]

[redacted]



[redacted]



[redacted]

[redacted]

**OpenAI/Chat GPT Disclosure from FBI**

103. On February 15, 2026, the investigative team was notified by the FBI that OpenAI had located two ChatGPT accounts believed to be used by Jesse. I have read Cst MONTGOMERY's report and the OpenAI referral and I have learned the following:

a. OpenAI identified two ChatGPT accounts that belong to the individual reported to be involved in the Tumbler Ridge school shooting;

b. Account #1:

[redacted]

[redacted]

c. Account #2:

[redacted]

104. On February 20, 2026, Cpl WILLIAMs became aware of a report from the Wall Street Journal about Jesse's ChatGPT account. I have read Cpl WILLIAMS' report and I have learned:

a. Jesse's ChatGPT account was subject to an internal review in June 2025 after Jesse's chat conversation discussed matters that could be related to the school shooting;

b. OpenAI banned Jesse's ChatGPT account and did not notify police at that time.

<u>Information from OpenAI</u>

105. On March 3, 2026 I spoke with Jeff SHIH (J. SHIH), Senior Counsel for OpenAI and I learned the following:

a. OpenAI OpCo, LLC is the legal entity of OpenAI;

b. Records are stored at 1455 3rd St, San Francisco, California, 94158, [USA];

c. The two accounts that OpenAI disclosed to law enforcement [redacted]

d. OpenAI keeps records such as subscriber information as well as the content of user prompts and model responses [J. SHIH explained this to me and it is when a ChatGPT user makes an input (prompt) they receive a model response and equated it to being like a question and an answer.];

e. [redacted]

**Other Investigational Avenues**

**Electronic Devices**

[redacted]

Jesse's iPhone

[redacted]

109. On February 20, 2026, I applied for five Search Warrants pursuant to Sections 487 and 487.1 of the *Criminal Code*. The Search Warrants were granted by Judicial Justice G. HAYES that same day that authorized investigators to search for specified categories of data from:

a. The Data extraction from Jesse's iPhone from TRSS;

b. Two iPhones and two computers seized from [redacted]

c. Cameras and SD cards seized from [redacted];

d. [redacted];

e. [redacted] data.

110. [redacted]

111. On February 24, 2026, Cpl LYNDE executed the search warrant for the two iPhones and two computer seized from [redacted], [the search was paused].

112. On February 24, 2026, Cpl RAMBALLY executed the search warrant on the Cameras and SD cards seized from [redacted]. The search was paused by Cpl RAMBALLY.

113. [redacted]

114. [redacted]

<u>Firearms Tracing</u>

115. Between February 13, 2026 and February 20, 2026, Lana KERR a Firearms Tracing Investigator with the Canadian Firearm Program attempted to trace four firearms of the firearms that had been seized from TRSS and [redacted] I have read the Trace Report and L. KERR's email to investigators and I have learned:

[redacted] <u>Firearms</u>

b. The shotgun [redacted];

c. The shotgun [redacted]

d. [redacted] rifle [redacted]

e. [redacted]

f. [redacted]

<u>TRSS Firearms</u>

[redacted]

**Justification for Production Order**

## Grounds the Named Offence Committed

116. I have reasonable grounds to believe that the Named Offence has been committed. I base my belief on the following as set out in this Information to Obtain:

a. On February 10, 2026, [redacted] were located deceased by [redacted], after [redacted] witnessed the Hyundai Palisade depart [redacted] in an erratic manner. The Hyundai Palisade arrived at TRSS shortly after and it has been determined that Jesse was the driver [redacted]

b. Autopsies of [redacted] revealed they both died of [redacted]

c. On February 10, 2026 beginning at [redacted] Tumbler Ridge RCMP received multiple reports of an active shooter at the Tumbler Ridge Secondary School;

d. On February 10, 2026, police responded to the Tumber Ridge Secondary School and at approximately [redacted] Cst GACHTER and Sgt HUGHES arrived and were shot at by Jesse shortly after. Sgt HUGHES reported locating deceased people [redacted]

e. [redacted]

f. During this investigation, witness statements have been taken from students [redacted];

g. In total six deceased victims have been identified at the TRSS crime scene. Autopsies were completed on all deceased victims

h. Jesse was located in TRSS deceased [redacted] The preliminary autopsy results outline that Jesse died of a self-inflicted gunshot wound [redacted]

i. [redacted] were located deceased by [redacted] after [redacted] and [redacted] witnessed the Hyundai Palisade depart [redacted] in an erratic manner. The Hyundai Palisade arrived at TRSS shortly after and it has been determined that Jesse was the driver [redacted]

j. Autopsies of [redacted] were completed and [redacted]

k. I believe that Jesse shot and killed [redacted] and then went to TRSS and shot and killed [redacted]

## Grounds the Documents will Afford Evidence

117. I have reasonable grounds to believe that the Data will afford evidence respecting the commission of the Named Offence for the following reasons:

a. After the mass shooting in Tumbler Ridge, OpenAI reached out to law enforcement to notify that they identified two ChatGPT accounts that they believed belonged to the individual reported in the Tumbler Ridge school shooting on February 10, 2026 [Jesse];

[redacted]

**OpenAI OpCo, LLC Can Produce Data**

118. I have reasonable grounds to believe that the Data is in the possession or control of OpenAI OpCo, LLC at this time based on the following, as set out in this Information to Obtain:

a. I spoke with J. SHIH, senior counsel of OpenAI who told me that:

i. The two ChatGPT accounts that OpenAI disclosed to law enforcement [redacted]

ii. OpenAI keeps records such as subscriber information as well as the content of user prompts and model responses;

iii. Records are stored at 1455 3rd St, San Francisco, California, 94158 [USA];

iv. The legal entity for OpenAI is, OpenAI OpCo, LLC;

v. [redacted].

119. I believe OpenAI OpCo, LLC has a virtual presence in Canada in that there services are available for use online from Canada.

**<u>OpenAI OpCo, LLC Not Under Investigation</u>**

120. To the best of my knowledge, information, and belief OpenAI OpCo, LLC is not under investigation for the Named Offence.

**Terms and Conditions – Production Order**

121. Based on the foregoing, I am requesting that a Production Order, pursuant to Sections 487.014(2) and 487.1(1) of the *Criminal Code* and associated Non-Disclosure Order, pursuant to Sections 487.0191(2) and 487.1(1) of the *Criminal Code*, be granted upon the terms and conditions as contained in the draft Order attached to this Information to Obtain as Exhibit "A".

**Sealing Order Justification**

122. Pursuant to Sections 487.3 and 487.1(1) of the *Criminal Code*, I am applying for a Sealing Order to prohibit access to, and the disclosure of, any record and or

information related to this application for Production Order and Non-Disclosure Order.

a. Due to the nature and circumstances of this investigation, I believe that the ends of justice would be subverted by the premature disclosure or public access of any information relating to the Production Order because disclosure of the information would:

b. Compromise the nature and extent of an ongoing investigation;

i. [redacted]

ii. [redacted]

iii. [redacted]

iv. [redacted]

[redacted]

c. Protect Other Investigations;

i. On March 3, 2026, the BC Chief Coroner announced a Coroner's Inquest. While this is not a criminal trial, it is a court proceeding involving a jury and I believe that it will rely on information gathered by police and disclosure of the Information to Obtain could influence and impact the goal and purpose of the Coroner's Inquest;

ii. I am aware that there is public and political pressure for the government to have a Public Inquiry for this event. At this time, government authorities have not announced whether they will or will not have a Public Inquiry. I believe if a Public Inqiry is called then information gathered by police will be relied upon and premature disclosure of this Information to Obtain could influence and impact the goal and purpose of a Public Inquiry;

d. This is a large and complex investigation that has garnered significant national and international attention with significant media coverage of the incident and the police investigation. For this reason, I believe that evidence outlined in this Information to Obtain if prematurely disclosed would certainly be disseminated through various news outlets that would affect and influence the current ongoing criminal investigation, the Coroner's Inquest, and a potential Public Inquiry.

e. I am aware that mass casualty incidents can inspire copycat attacks. For example, the Columbine High School massacre is well known to have had this effect where it inspired other shootings in the following years. Therefore, I believe premature disclosure of this Information to Obtain without a complete criminal investigation, and the following Coroner's Inquest or Public Inquiry where all the facts are known could put the public at risk.

which outweighs in importance the access to the information.

123. Further, I request that an Order be granted prohibiting access to this Information and materials related to this application be held at the Dawson Creek Court Registry located at 1201 103rd Avenue, Dawson Creek, until further ordered by this Court.

Pursuant to Section 487.1(2) of the *Criminal Code*, I state that all matters submitted in support of this application, as contained in this Information to Obtain, are true to my knowledge and belief.

Dated this 6 day of MARCH, 2026,
at PRINCE GEORGE, British Columbia.

Cst. Jonathan Paquin, # 66892
North District Major Crime Unit

(Affiant Name) (Affiant Signature)

I certify this information was received by me by means of telecommunication that produces a writing at

2:52 pmon March 6, 2026 at Burnaby, British Columbia
(time) (date) (city/municipality)

GHayes
A Judicial Justice in and for the Province of British Columbia

Name: GHayes, Judicial Justice
(print)

Canada, Province of British Columbia

THIS IS EXHIBIT "A" REFERRED TO IN THE
AFFIDAVIT OF JONATHAN PAQUIN
SWORN BEFORE ME AT PRINCE GEORGE
THIS 6 DAY OF MARCH 2026

RCMP
Murphy

A COMMIS... ITS
Sgt. Chris Villeneuve, #63783
North District Major Crime Unit

*Form 5.005*
*Court Registry: Dawson Creek*

**PRODUCTION ORDER**
**Issued by Telecommunication that Produces a Writing,**
**Pursuant to Sections 487.014(3) and 487.1(1) of the *Criminal Code***

To: OpenAI OpCo, LLC, and any employee, servant or agent of OpenAI OpCo, LLC

**WHEREAS** it appears on the oath of Constable Jonathan Paquin, a Peace Officer of Prince George, in the Province of British Columbia;

**THAT** there are reasonable grounds to believe that the following offence has been committed, namely:

a. Murder, on or about February 10, 2026, at or near Tumbler Ridge, in the Province of British Columbia, contrary to Section 235 of the *Criminal Code*;

**AND THAT** the following Data is in your possession or control and will afford evidence respecting the commission of the offence:

1. The following ChatGPT account records related to email, [redacted], between [redacted]

   i. Subscriber Information including but not limited to: name, date of birth, phone number, email, and billing information;

   ii. [redacted];

2. The following ChatGPT account records related to email, [redacted] between [redacted]

i. Subscriber Information including but not limited to: name, date of birth, phone number, email, and billing information;

ii. [redacted]

**THEREFORE**, you are ordered to:

1. Produce a document that is a copy of the said document and/or data that is in your possession or control when you receive this order; and/or

2. Prepare and produce a document containing the said data specified that is in your possession or control when you receive this order.

3. The document must be produced to Constable Jonathan Paquin within 14 days at 520 North Nechako Road, Prince George, British Columbia, V2K 1A1, jon.paquin@rcmp-grc.gc.ca in the following form: in a legible, readable and/or otherwise accessible and usable form, certified to be a true copy of the data by way of attached affidavit.

**THIS ORDER** is subject to the following conditions:

1. You have the right to apply to revoke or vary this order.

2. If you contravene this order without lawful excuse, you may be subject to a fine, to imprisonment or to both.

3. This data you are ordered to produce, may be produced on or through an electro-magnetic medium.

Issued at _______ __m., ________________, 2026, at ____________________,
Time Date Place

in the Province of British Columbia.

______________________ ____________________
A Judicial Justice in and for the Province of British Columbia — Print Name

**IMPORTANT INFORMATION RELATING TO**

**PRESERVATION ORDERS (s. 487.013) and**
**PRODUCTION ORDERS (s. 487.014 to s. 487.018)**

**Effect of Orders made under s. 487.013 to 487.018**

*Section 487.019(2) Criminal Code provides that:*

The order has effect throughout Canada.

**Application to Revoke or Vary an Order Prohibiting Disclosure**

*Section 487.0191(4) Criminal Code provides that:*

A peace officer or a public officer or a person, financial institution or entity that is subject to an order made under subsection (1) may apply in writing to the justice or judge who made the order – or to a judge in the judicial district where the order was made – to revoke or vary the order.

**Application for Review of Production Order**

*Section 487.0193(1) Criminal Code provides that:*

Before they are required by an order made under any sections 487.014 to 487.018 to produce a document, a person, financial institution or entity may apply in writing to the justice or judge who made the order – or to a judge in the judicial district where the order was made – to revoke or vary the order.

**Application to the Court**

Applications to the court must be made in writing and filed at the Court Registry indicated on the front of this order.

The application may be made only if notice of your intention to apply to review the order, is given to peace officer or public officer named in the order within 30 days after the day on which the order is made.

**Self-Incrimination**

*Section 487.0196 Criminal Code provides that:*

No one is excused from complying with an order made under any of sections 487.014 to 487.018 on the ground that the document that they are required to produce may tend to incriminate them or subject them to a proceeding or penalty. However, no document that an individual is required to prepare may be used or received in evidence against them in a criminal proceeding that is subsequently instituted against them, other than a prosecution for an offence under section 132, 136 or 137.

**Offences**

**Section 487.0198 – Preservation or Production Order**

A person, financial institution or entity that contravenes an order made under any of section 487.013 to 487.018 without lawful excuse is guilty of an offence punishable on summary conviction and is liable to a fine of not more than $250,000 or to imprisonment for a term of not more than two years less a day, or to both.

**Section 487.0199 – Destruction of Preserved Data**

A person who contravenes section 487.0194 without lawful excuse is guilty of an offence punishable on summary conviction.

COURT REGISTRY
AUG 07 2026
DAWSON CREEK, B.C.

Court File: 37553
Court Registry: Dawson Creek
Police File No.: 2026-2929

**IN THE PROVINCIAL COURT OF BRITISH COLUMBIA**

**IN THE MATTER** of an Application under s. 487.3(4) of the *Criminal Code* for an Order to Unseal Materials Filed in Support of Search Warrants dated February 11 and 20, 2026 and Materials Filed in Support of a Production Order dated March 6, 2026

| | | |
|---|---|---|
| BEFORE THE HONOURABLE REGIONAL ADMINISTRATIVE JUDGE HARRIS | ) ) | Monday the 3rd day of August, 2026 |

**SECOND LIMITED UNSEALING ORDER**

**UPON THE WRITTEN APPLICATION** of Lauren McMurtry, counsel for the Attorney General of Canada on behalf of the RCMP for a limited unsealing order pursuant to section 487.3(4) of the *Criminal Code*, in the context of an application by media outlets, namely, the Canadian Press, Canadian Broadcasting Corporation, The Globe and Mail, Global News, CTV News and Postmedia Network Inc. (the "Applicants"), for access to sealed records relating to the search warrants issued on February 11 and February 20, 2026 and the production order issued on March 6, 2026 in relation to police file no. 2026-2929 (the "Requested Records");

**AND UPON** this matter coming before me, by desk order, at the Courthouse located at 1201 – 103 Avenue, Dawson Creek, British Columbia, on consent of all parties;

**AND UPON** reviewing the Notice of Application dated July 30, 2026;

**AND UPON** this Court granting a previous limited unsealing order, dated, July 15, 2026, which provided access to the Requested Records to counsel for the BCPS and *amicus curiae*, Thomas Arbogast, KC, for the purposes of consultation or participation in this proceeding;

**IT IS ORDERED THAT** the Attorney General of Canada shall be permitted to provide a vetted version of the Requested Records, after review by both counsel for the BCPS and *amicus curiae*, Thomas Arbogast, KC, to counsel for the Applicants on or before August 7, 2026.

**IT IS FURTHER ORDERED THAT** the Attorney General of Canada shall file a copy of the vetted version of the Requested Records provided to the Applicants, to be placed in the Court file, unsealed, along with a copy of this order.

**IT IS FURTHER ORDERED THAT** other than the variation to the sealing order as set out above and in the first limited unsealing order, the Requested Records shall remain sealed in the Court file, and the terms of the sealing orders relating to the Requested Records shall remain in full force and effect.

BY THE COURT:

R.P. Harris

The Honourable Judge Harris
The Provincial Court of British Columbia

Approved as to form:

Peter Shyba for Lauren E. McMurtry
Counsel for the Attorney General of Canada
On behalf of the RCMP

SIMON LUSZTIG FOR Scott Dawson
Counsel for the Applicants

Thomas Arbogast KC

Thomas Arbogast, KC
*Amicus Curiae*