# EXHIBIT B

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY
OCT 20 2026

No. S 267922
Vancouver Registry

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

BETWEEN:

OPENAI OPCO LLC

PETITIONER

AND:

INFORMATION AND PRIVACY COMMISSIONER FOR BRITISH COLUMBIA

RESPONDENT

**PETITION TO THE COURT**

ON NOTICE TO:

Information and Privacy Commissioner for British Columbia
4th Floor, 947 Fort Street
Victoria, BC V8V 3K3

Ministry of Attorney General
Legal Services Branch
PO Box 9290 STN PROV GOVT
Victoria, BC V8W 9J7
Attention: Duty Counsel

The address of the registry is: 800 Smithe Street, Vancouver, BC V6Z 2E1

The petitioner estimates that the hearing of the petition will take 5 days.

This matter is an application for judicial review.

This proceeding is brought for the relief set out in Part 1 below, by

☒ the person(s) named as petitioner(s) in the style of proceedings above.

☐ [insert name of each petitioner] (the petitioner(s))

If you intend to respond to this petition, you or your lawyer must:

(a) File a response to petition in Form 67 in the above-named registry of this court within the time for response to petition described below, and

(b) Serve on the petitioner(s)

(i) 2 copies of the filed response to petition, and

(ii) 2 copies of each filed affidavit on which you intend to rely at the hearing.

**Orders, including orders granting relief claimed, may be made against you, without any further notice to you, if you fail to file the response to petition within the time for response.**

**Time for response to petition**

A response to petition must be filed and served on the petitioner(s),

(a) If you were served with the petition anywhere in Canada, within 21 days after that service,

(b) If you were served with the petition anywhere in the United States of America, within 35 days after that service,

(c) If you were served with the petition anywhere else, within 49 days after that service, or

(d) If the time for response has been set by order of the court, within that time.

| | | |
|---|---|---|
| (1) | The ADDRESS FOR SERVICE of the petitioner is: | Osler, Hoskin & Harcourt LLP<br>Suite 3000, Bentall Four<br>1055 Dunsmuir Street<br>Vancouver, BC V7X 1K8<br><br>Attention: Emily MacKinnon / Maya Churilov |
| | Fax number address for service (if any) of the petitioner(s): | NIL |
| | E-mail address for service (if any) of the petitioner: | emackinnon@osler.com<br>mchurilov@osler.com |
| (2) | The name and office address of the petitioner's lawyer is: | Osler, Hoskin & Harcourt LLP<br>Suite 3000, Bentall Four<br>1055 Dunsmuir Street<br>Vancouver, BC V7X 1K8 |

## Claim of the Petitioner

**Part 1: ORDER(S) SOUGHT**

1. A declaration that the decision by the Information and Privacy Commissioner for British Columbia (the "**OIPC**") to commence an investigation on or about June 10, 2026, File P26-00413 (the "**Investigation**") is unreasonable;

2. An order quashing the Investigation;

3. In the alternative, a declaration that Order P26-16 of the OIPC dated September 28, 2026 (the "**Order**") is unreasonable;

4. In the alternative, an order quashing and setting aside the Order;

5. Costs of this application;

6. Such further and other relief as this Honourable Court may deem just.

**Part 2: FACTUAL BASIS**

***Overview***

1. This judicial review arises from the OIPC's Investigation and Order following the horrific shooting committed by Jesse Van Rootselaar in Tumbler Ridge on February 10, 2026. OpenAI's thoughts remain with the victims, their families, and the entire community in the wake of that incomprehensible tragedy.

2. Following the tragedy, OpenAI immediately and proactively reached out to law enforcement to offer relevant documents–including Ms. Van Rootselaar's ChatGPT chat logs–and then produced those chat logs subject to legal process from the RCMP. OpenAI also subsequently produced Ms. Van Rootselaar's chat logs to the Province of British Columbia as part of its ongoing civil litigation in the United States.

3. OpenAI also reached out to, and met with, Canadian government representatives to discuss how online platforms can work collaboratively with officials in the interest of public safety. Meanwhile, the RCMP's investigation is ongoing; the BC Coroners Service will conduct an inquest; and the federal government has tabled legislation addressing online harms.

4. Now the OIPC, too, has elected to commence an Investigation into Tumbler Ridge and the role of online platforms, including OpenAI, in the tragedy. But a tragedy, however grave, cannot give a privacy regulator expertise over online safety, nor does it expand the OIPC's powers beyond their statutory and constitutional limits.

5. The OIPC has offered no coherent rationale for the Investigation and, contrary to the *Personal Information Protection Act*, S.B.C. 2003, c. 63 ("***PIPA***"), has identified no reasonable grounds to believe OpenAI breached that statute in connection with the Tumbler Ridge tragedy. No such grounds exist. Indeed, the Province's US lawsuit alleges the opposite: that OpenAI should have made *greater* use of personal information by providing it to law enforcement eight months before the tragedy.

6. Moreover, even if the OIPC had reasonable grounds to commence this new Investigation, it is *res judicata*. For more than three years, the OIPC participated in a joint investigation with other Canadian privacy regulators, concluding on May 6, 2026 that the commitments made by OpenAI would put OpenAI in compliance with *PIPA*. OpenAI should not immediately be faced with a duplicative second investigation.

7. In furtherance of the new Investigation, the OIPC has issued a sweeping Order, both requiring extensive document production and compelling an OpenAI representative to answer questions. The Order is overbroad and unnecessary: it requires production of documents and information that are irrelevant to the Investigation and that far exceed the OIPC's statutory mandate. The broad demand includes, for instance, *all* of Ms. Van Rootselaar's chat logs (which have already been provided to law enforcement and to the Province), and *all* of OpenAI's records regarding its decision whether to refer Ms. Van Rootselaar's account to law enforcement. This compelled production far exceeds the permitted scope of s. 38 of *PIPA*; it is contrary to s. 8 of the *Charter*; and it offends the OIPC's own privacy obligations under the *Freedom of Information and Protection of Privacy Act,* R.S.B.C. 1996, c. 165 ("***FOIPPA***").

8. ChatGPT is used by more than a billion people each week. OpenAI takes the privacy of these billion-plus users very seriously, as demanded by its policies and by the law, including the US *Stored Communications Act* ("***SCA***") with which OpenAI must comply. In compliance with those obligations, and subject to valid exceptions to the *SCA*, OpenAI

has worked with law enforcement to disclose Ms. Van Rootselaar's chat logs, and it has also produced those chat logs to the Province as part of civil litigation. The OIPC's Order, however, is of a different nature: it is an unnecessary and impermissible demand for compelled production of personal information, and it would set a dangerous precedent.

9. In substance, the Investigation and the Order amount to an inquiry into online platforms generally, including content moderation and online safety. Those matters fall far outside the OIPC's expertise, and they are beyond the statutory and constitutional limits of its jurisdiction.

10. The Investigation and the Order should be quashed.

***Background***

11. OpenAI OpCo LLC ("**OpenAI**") is an American artificial intelligence research and development company headquartered in San Francisco, California. OpenAI has developed a generative artificial intelligence service that uses large language models to converse with users, answer questions, and generate text, code, images, and audio in response to prompts by users ("**ChatGPT**").

12. OpenAI's Privacy Policy describes OpenAI's practices with respect to personal information that OpenAI collects from individuals or about individuals and how that personal information is used when the individual uses ChatGPT (the "**Privacy Policy**"). The Privacy Policy is available online and advises individuals that their personal information is used for various purposes, including for response generation on ChatGPT.

13. Users' regular and archived chat conversations with ChatGPT are saved to their accounts. Temporary chats may be saved by OpenAI for up to 30 days.

14. OpenAI's Terms of Use create an agreement between OpenAI and an individual using OpenAI's services (including ChatGPT). Individuals that use OpenAI's services agree to the Terms of Use. The Terms of Use state that individuals cannot use the services for any illegal, harmful, or abuse activity. The Terms of Use are available online.

15. OpenAI's Usage Policies set out rules for individual use of ChatGPT. The Usage Policies prohibit inappropriate use of ChatGPT, including for topics such as illicit activities,

violence, sexual violence, destruction of property, provision of advice that requires a license, or circumventing OpenAI's safeguards. The Usage Policies are available online.

16. OpenAI's Government User Data Request Policy governs disclosures of user data to government and law enforcement authorities. Pursuant to the Government User Data Request Policy, OpenAI may only disclose user data in response to legal process issued from a jurisdiction outside the United States if:

> the legal process would constitute a valid and compulsory legal process if issued to a company in the jurisdiction of the requesting country, and where doing so is consistent with US law, international human rights laws, principles, and norms, and the terms of service, policies and principles of OpenAI US.

17. To promote safe and responsible use of ChatGPT, OpenAI uses a range of procedures and tools to address user content that may violate the law or OpenAI's terms and policies, including through a combination of automated technologies, human review, and enforcement action.

***Previous Joint Investigation into ChatGPT***

18. In May 2023, the Office of the Privacy Commissioner of Canada (the "**OPC**"), the Commission d'accès à l'information du Québec ("**CAI**"), the Information and Privacy Commissioner of Alberta ("**OIPC-AB**"), and the OIPC (collectively, the "**Offices**"), initiated a joint investigation pursuant to section 11(2) of the *Personal Information Protection and Electronic Documents Act*, section 81 of Quebec's *Privacy Sector Act*, section 36(1)(a) of Alberta's *Personal Information Protection Act*, and section 36(1)(a) of British Columbia's *Personal Information Protection Act* (collectively, the "***Acts***") into ChatGPT and the underlying models that powered it (the "**Joint Investigation**").

Affidavit #1 of Cristina Misceo, made on October 26, 2026 ("**Misceo #1**"), Ex. A.

19. The Joint Investigation sought to determine whether OpenAI:

(a) collected, used, and/or disclosed personal information for purposes that a reasonable person would consider appropriate in the circumstances, including in

generating responses to ChatGPT prompts, and whether it limited this collection to information that was necessary for these purposes;

(b) obtained valid consent for the collection, use and disclosure of the personal information of individuals based in Canada via or in relation to ChatGPT;

(c) fulfilled its obligations to be open and transparent;

(d) took reasonable steps to ensure that the information it generates about individuals is as accurate, complete, and up-to-date as is necessary for the purposes for which it is to be used;

(e) provided individuals with the ability to obtain access to, and correct, their personal information;

(f) fulfilled its obligation to establish appropriate retention and disposal procedures for the personal information that it collects, uses and discloses; and

(g) was accountable for the personal information under its control.

Misceo #1, Ex. A.

20. In conducting the Joint Investigation over the course of three years, the Offices considered information from a variety of sources, including written representations from OpenAI, interviews conducted with several OpenAI employees, internal testing on ChatGPT from the perspective of a user, and information from publicly available sources.

Misceo #1, Ex. A.

21. Upon completion of the evidence-gathering phase of the Joint Investigation, the Offices issued a Preliminary Report of Investigation, which set out the rationale for preliminary findings, identified a number of recommendations to bring OpenAI into compliance with the Acts, and invited OpenAI to respond.

Misceo #1, Ex. A.

22. OpenAI responded to the Preliminary Report of Investigation that it is, through a combination of existing practices and associated communications, compliant with the *Acts* in most respects. OpenAI also provided new information and explanations about measures that it had recently implemented in relation to the development and deployment of ChatGPT.

Misceo #1, Ex. A.

23. The Joint Investigation focussed on ChatGPT models GPT-3.5 and GPT-4. It also considered the adequacy of the new measures implemented by OpenAI for future models in response to the Offices' Preliminary Report of Investigation.

Misceo #1, Ex. A.

***The OIPC's Correspondence with OpenAI***

24. On February 10, 2026, a mass shooting occurred in Tumbler Ridge, British Columbia. On February 11, 2026, the shooter was identified as an individual named Jesse Van Rootselaar.

25. Following the tragedy, OpenAI identified two ChatGPT accounts associated with Ms. Van Rootselaar, including one account that had been banned in June 2025 for violent content in violation of OpenAI's usage policies.

26. On February 11, 2026, OpenAI voluntarily disclosed to law enforcement that it had information about Ms. Van Rootselaar's accounts. In response to legal process from the RCMP, OpenAI then produced Ms. Van Rootselaar's chat logs. OpenAI has cooperated with and continues to cooperate with law enforcement agencies in their investigation into the Tumbler Ridge tragedy.

27. On February 25, 2026, the OIPC wrote to OpenAI and requested information regarding the process by which Ms. Van Rootselaar's behaviour on ChatGPT was flagged for review by OpenAI, including: the types of behaviour that OpenAI monitors for flagging; the review process itself; the process by which it was escalated to consider potential disclosure to Canadian authorities; the rationale captured at the time for not making such a disclosure; and the process by which the decision was taken to disclose this information following the tragedy. The OIPC also requested information regarding OpenAI's established policies and

procedures that guided the review process, including whether users are notified that flagging and review processes take place and whether such notification processes are different for users who are minors.

28. On March 6, 2026, OpenAI responded to the OIPC's request and explained OpenAI's process for detecting and escalating potential violations of the Usage Policies.

29. On March 19, 2026, the OIPC wrote to OpenAI and advised that the OIPC required more information to determine what next steps may be necessary to discharge its mandate under *PIPA*. The OIPC requested: (i) complete records of all interactions from ChatGPT accounts associated with Ms. Van Rootselaar, (ii) records or logs of any internal flags generated by ChatGPT/OpenAI systems related to Ms. Van Rootselaar's accounts, and (iii) records relating to the decision not to disclose Ms. Van Rootselaar's accounts, including what information was sent to be considered for human review (the "**Initial Requests**"). The OIPC confirmed that it had not initiated an investigation and that any response from OpenAI was voluntary.

30. On March 27, 2026, counsel for OpenAI responded to the OIPC and advised that the Initial Requests sought production of documents containing Ms. Van Rootselaar's personal information. OpenAI further advised that the OIPC had not identified a statutory basis to disclose Ms. Van Rootselaar's personal information under *PIPA*. OpenAI reiterated that it had already disclosed the information it had regarding Ms. Van Rootselaar's ChatGPT accounts to law enforcement, in accordance with section 18(1)(j) of *PIPA*. OpenAI also asked the OIPC to clarify the "issues being contemplated" by the OIPC, and how the Initial Requests could assist.

***Conclusion of the Joint Investigation***

31. On May 6, 2026, the Offices released their findings following the Joint Investigation. As a "preliminary matter", the Offices recognized that "OpenAI's collection of user interactions is necessary to efficiently respond to user queries." In concluding the Joint Investigation, the OPC found that OpenAI's commitments—including measures implemented for future models—sufficiently addressed the intent of the recommendations made by the Offices to

resolve any identified contraventions. The OIPC and OIPC-AB joined the OPC in making the joint recommendations in the Joint Investigation.

Misceo #1, Ex. A.

32. On the same day, the Offices held a press release for the Joint Investigation. During the press release, OIPC Commissioner Michael Harvey stated:

> This investigation focused on primarily how ChatGPT trained and then used its models or how OpenAI trained and used ChatGPT. The specific circumstances of Tumbler Ridge are of course a very specific use in that instance, and PIPA is engaged. So I guess from a B.C. Regulator's perspective the first thing I should say is that our first thoughts after the tragedy in Tumbler Ridge were for that community itself, for the people that were–and family–and community that were harmed and that will remain foremost in our minds as we consider, as now, with our legislative mandate, how we will consider how the *Personal Information Protection Act* has been engaged with this specific instance and we are going to be trying to understand the best way that our office can add value. So we're monitoring the–these issues very carefully and as you may know there's–there are many investigations ongoing to Tumbler Ridge, we're going to be considering how best we can add value, and we will communicate about that when it's appropriate. [emphasis added]
>
> Misceo #1, Ex. B.

33. As required by the Report of Findings, OpenAI continues to provide the Offices with status reports on its implementation of the additional privacy-enhancing measures to which it committed.

Misceo #1, Ex. A at paras 18, 57, 100-106.

***The OIPC's Current Investigation***

34. On June 10, 2026, the OIPC wrote to OpenAI and advised that pursuant to section 36(1)(a), the OIPC was commencing the Investigation into the use of Ms. Van Rootselaar's personal information by online platforms prior to the Tumbler Ridge tragedy. The OIPC advised that "the issue under investigation is whether select online platforms used Ms. Van Rootselaar's personal information only for purposes that a reasonable person would consider appropriate in the circumstances, as per PIPA s.14". The letter attached an Appendix A that set out sixteen questions to which the OIPC sought OpenAI's written

responses and associated documents by July 10, 2026. The questions were organized into three categories: (i) account-specific information; (ii) transparency and content moderation practices; and (iii) age assurance.

35. On June 23, 2026, counsel for OpenAI responded to the OIPC requesting an extension of time to respond to the various extensive requests made by the OIPC. OpenAI asked the OIPC to identify its reasonable grounds to believe that OpenAI has not complied with *PIPA*, as required by s. 36(1) of *PIPA* before an investigation could be commenced. OpenAI also advised the OIPC that its questions appeared to extend beyond matters directly related to compliance with *PIPA*.

36. On June 25, 2026, the OIPC advised it would extend the time for OpenAI to respond to each request. This extension was confirmed by letter delivered to OpenAI's counsel on June 25, 2026, but incorrectly dated July 25, 2026.

37. In response to OpenAI's inquiry into the grounds for the Investigation, the OIPC advised:

> "The Commissioner initiated this investigation based on widespread media coverage that Ms. Van Rootselaar had a ChatGPT Account, and that her use of ChatGPT was reviewed by OpenAI staff in the wake of the Tumbler Ridge tragedy. Given OpenAI staff were able to identify Ms. Van Rootselaar; in interacting with ChatGPT, Ms. Van Rootselaar is likely to have disclosed her personal information to ChatGPT by way of prompts. The possible breach of PIPA in this case is whether the responses by ChatGPT are a use of Ms. Van Rootselaar's personal information in a manner that a reasonable person would consider appropriate in the circumstances. An organization's obligations under PIPA extend to creating an adequate privacy management program to ensure compliance with the Act, and the questions we have asked of OpenAI are all grounded in that general obligation." [Emphasis added]

38. On July 17, 2026, OpenAI reiterated its concerns regarding the disclosure of Ms. Van Rootselaar's personal information in light of the prohibitions in *PIPA* and OpenAI's Government User Data Request Policy. Within these constraints, OpenAI provided detailed responses to the OIPC's account specific requests.

39. On July 31, 2026, OpenAI provided the OIPC with 15 pages of responses to the OIPC's requests concerning transparency and content moderation and age assurance, consistent

with OpenAI's policies. OpenAI reiterated to the OIPC that its Government User Data Request Policy prohibits OpenAI from disclosing user data.

40. On September 28, 2026, the OIPC issued the Order.

***The OIPC's Order***

41. The Order requires OpenAI to supply information and produce documents in response to nineteen requests set out in Appendix A to the Order (the "**Requests**"). The Requests are expansive and fall into the following categories (the "**Categories**"):

(a) **Background information:** paragraph 13 of the Order states "some of the information sought is designed to ensure that investigators have a sufficient baseline level of information about ChatGPT—and Ms. Van Rootselaar's interaction with it—to properly understand and contextualize the remaining information and frame further inquiries as needed. This information also provides the investigative team with information to better understand why and how certain content was flagged, along with OpenAI's decisions around closing her accounts";

(b) **Age assurance:** paragraph 16 of the Order states "the further information and documents sought in Appendix 'A' provide detail that will allow the investigative team to understand how age may have factored into the use, response generation and personalization, content review and moderation, and decisions impacting Ms. Van Rootselaar's account, and the age-related models OpenAI currently employs";

(c) **Response generation and personalization**: paragraph 19 of the Order states "information and documents provided with respect to response generation and personalization are needed for the investigators to assess and determine whether OpenAI's use of Ms. Van Rootselaar's personal information in the delivery of the user experience was reasonable in the circumstances";

(d) **Content review and moderation**: paragraph 21 of the Order states "the information and documents sought focus on obtaining further insight and clarity into the policies and practices that would have applied to Ms. Van Rootselaar's account(s), including detail that OpenAI may have felt unable to provide outside

the context of a compulsory legal process". Paragraph 22 of the Order states "the information and document requests in Appendix 'A' are designed to obtain the specifics necessary for the investigative team to understand how OpenAI responds to issues requiring moderation, the processes moderators follow, decisions around escalation and human review, internal considerations around disclosure to law enforcement or other third parties, and how all of that occurred (or did not) in Ms. Van Rootselaar's case."

42. The Order further states that the OIPC is investigating both how OpenAI reviewed Ms. Van Rootselaar's account to enforce its user policies, as well as how ChatGPT used Ms. Van Rootselaar's personal information to generate responses to her.

43. The Order makes the following mandatory orders:

(a) Pursuant to s. 38(1)(a), no later than November 13, 2026, a representative of OpenAI with relevant knowledge to this Investigation must attend in person or by electronic means to the OIPC to answer the questions listed in the third column of the chart attached as **Appendix "A"** to the Order. The OIPC may accept written response in full or partial satisfaction of this item.

(b) Pursuant to s. 38(1)(b),

(i) No later than October 9, 2026, OpenAI must produce the records of interactions between Ms. Van Rootselaar and ChatGPT as detailed in the fourth column, Item 4 of the chart found at **Appendix "A"**; and

(ii) No later than October 23, 2026, OpenAI must produce copies of the remaining documents listed in the fourth column of the chart attached to the Order at **Appendix "A"**.

44. On October 2, 2026, OpenAI requested a 15-day extension to comply with the Order.

45. On October 6, 2026, the OIPC granted OpenAI's extension request such that each deadline was extended by 15 days.

**Part 3: LEGAL BASIS**

46. This petition is brought pursuant to sections 2 and 7 of the *Judicial Review Procedure Act*, R.S.B.C. 1996, c. 241 and Rules 2-1(2)(b) and 16-1 of the *Supreme Court Civil Rules*. The petitioner further relies on the *Personal Information Protection Act*, S.B.C. 2003, c. 63.

47. OpenAI asks this Court to quash the Investigation for the following reasons:

(a) the OIPC's determination that it had reasonable grounds to believe that OpenAI is in breach of *PIPA*, permitting it to commence the Investigation, is unreasonable;

(b) the subject matter of the Investigation, namely how ChatGPT used Ms. Van Rootselaar's personal information to generate responses to her, has already been investigated by the OIPC; it is *res judicata* and the decision to commence the Investigation is therefore incorrect or, in the alternative, unreasonable;

48. In the alternative, OpenAI asks this Court to quash or set aside Requests made in the Order for the following reasons:

(a) Requests 1-5 have already been investigated; they are *res judicata* and are therefore unreasonable;

(b) Requests 5-12, 15-17 and 19 are overly broad or not relevant to the Investigation; they are an unconstitutional search and seizure, and are therefore invalid or unreasonable; and

(c) Requests 1-2 and 4-6 exceed the necessary amount of personal information required by the OIPC to conduct its investigation and are therefore unreasonable.

49. This petition was filed within 30 days after the receipt of the Order. Pursuant to section 53(2) of *PIPA*, the Order is stayed until a court orders otherwise.

### *A. Standards of Review*

50. Whether the Investigation or the Order are barred by reason of *res judicata* is reviewable on the standard of correctness. The application of this doctrine to an administrative regulator's reopening of a matter that was finally determined in a previous joint, national

investigation raises a question of law of central importance to the legal system as a whole. The OIPC's Investigation and Order raise the risk of inconsistent findings and engage the principle that a person should not be twice vexed.

*Canada (Minister of Citizenship and Immigration) v. Vavilov*, 2019 SCC 65 at para. 60; *Beach Place Ventures Ltd. v. Employment Standards Tribunal*, 2022 BCCA 147.

51. Whether the Order constitutes a valid search and seizure pursuant to section 8 of the *Charter* is reviewable on the standard of correctness.

*Binance Holdings Limited v. Ontario Securities Commission*, 2025 ONCA 751 at paras. 116-117 (leave to appeal to SCC granted, 2026 CanLII 47886).

52. The remaining issues raised in this judicial review are reviewable on the standard of reasonableness.

*Clearview AI Inc. v. Information and Privacy Commissioner for British Columbia*, 2024 BCSC 2311 at paras. 30-36, aff'd 2026 BCCA 67.

### *B. The OIPC Did Not Have Reasonable Grounds to Pursue the Investigation*

53. Pursuant to section 36(1)(a) of *PIPA*, the OIPC must have reasonable grounds to believe that an organization is in violation of *PIPA* to commence an investigation on its own initiative. This precondition restrains the OIPC from conducting "random investigations or audits of organizations".

*PIPA*, s 36; *Sochowski v British Columbia (Information and Privacy Commissioner)*, 2008 BCSC 1390 at para 41, quoting *Finning Canada (Re)*, 2007 CanLII 44884 (BC IPC) at paras 51-53.

54. The "reasonable grounds" threshold in *PIPA* is equivalent to the minimum grounds for authorizing a search or seizure in connection with a criminal or quasi-criminal matter: reasonable and probable grounds to believe that an offence has been committed and there is evidence to be found at the place of search.

*Sochowski v. British Columbia (Information and Privacy Commissioner)*, 2008 BCSC 1390 at paras. 41-43.

55. By analogy, "reasonable grounds" in s. 36(1)(a) imposes a higher standard than mere suspicion. It requires a reasonable probability that *PIPA* has been breached, which in turn requires an objective basis for believing the target of the investigation is connected to the breach, based on compelling and credible information.

*R. v. Beaver*, 2022 SCC 54 at para. 72.

56. The Investigation and the Order are premised on the OIPC's allegation that OpenAI breached section 14 of *PIPA*, which states that "an organization may use personal information only for purposes that a reasonable person would consider appropriate in the circumstances". In the Order, the OIPC does not assert any reasonable grounds for this allegation.

57. When asked to identify the reasonable grounds for the Investigation, the OIPC stated in its June 25, 2026 letter that the Investigation is based on "widespread media coverage" indicating that OpenAI was "able to identify" Ms. Van Rootselaar's accounts. The OIPC then reasoned that Ms. Van Rootselaar likely disclosed her personal information to ChatGPT. The OIPC then asserts that "the possible breach of PIPA…is whether *the responses by ChatGPT* are a use of Ms. Van Rootselaar's personal information in a manner that a reasonable person would consider appropriate in the circumstances" (emphasis added).

58. With respect, the OIPC's supposition that Ms. Van Rootselaar provided her personal information to ChatGPT does not provide reason to believe that ChatGPT's responses breached *PIPA*. It is well-known that users provide personal information to ChatGPT (indeed, as addressed below, the Joint Investigation examined this thoroughly). There is nothing in the correspondence, the Order, or the media coverage to explain how responses generated by ChatGPT would or could constitute a violation of *PIPA*.

59. Subsequently, in the Order, the OIPC stated it was also investigating OpenAI's review of Ms. Van Rootselaar's account for the purpose of enforcing its user policies. The OIPC provided no reasonable grounds to believe OpenAI's review constituted a breach of *PIPA*. The implication, however, appears to be that OpenAI improperly used Ms. Van Rootselaar's personal information, thereby breaching Ms. Van Rootselaar's privacy rights

under *PIPA*, by conducting that review. The Province of British Columbia has publicly sued OpenAI, alleging the opposite—that OpenAI should have made *greater* use of Ms. Van Rootselaar's personal information by disclosing her chats to law enforcement.

60. Based on the Order and the prior correspondence, it appears the OIPC has commenced its investigation to inquire into the operation of online platforms generally, including their online safety and content moderation practices. These are matters of online platform regulation that fall outside the Commissioner's mandate under *PIPA*, which is limited to the collection, use and disclosure of personal information. They do not engage any breach of *PIPA*.

### *C. The Investigation is Res Judicata, or in the alternative, the Requests are Res Judicata*

61. OpenAI asks that the Investigation be quashed insofar as it relates to how ChatGPT used Ms. Van Rootselaar's personal information to generate responses to her, as this subject is *res judicata* due to issue estoppel, or alternatively it is a relitigation and thereby an abuse of process.

62. In the alternative, Requests 1-5 of the Order relate to issues that have already been determined, and those portions of the Order should be quashed due to issue estoppel, or alternatively as a relitigation.

63. *Res judicata* serves two goals of public policy: (1) finality for the justice system; and (2) fairness for the parties, as no one should be "twice vexed" by the same cause. The related doctrines of issue estoppel and abuse of process by relitigation are based on the same premise.

*Reliable Mortgages Investment Corp. v. Chan*, 2014 BCCA 14 at paras. 23, 35.

#### *a. The Investigation is Barred by Issue Estoppel*

64. Issue estoppel applies to both administrative and court proceedings, and requires:

b. the issue addressed in the new proceeding was determined in the earlier proceeding;

c. the earlier decision is final; and

d. the parties to the proceedings are the same, or their privies.

*Fortinet Technologies (Canada) ULC v. Bell Canada*, 2018 BCCA 277 at para. 27.

65. An issue will be "determined" in an earlier proceeding if it was either expressly or implicitly decided. When issue estoppel applies, a party will be prohibited from pursuing an inconsistent position in a future proceeding.

*Fortinet Technologies (Canada) ULC v. Bell Canada*, 2018 BCCA 277 at paras. 27, 32, 40.

66. The Joint Investigation was a final decision. In conducting the Joint Investigation, the Offices acted in an adjudicative and judicial manner, and they made findings that are binding on OpenAI.

*Danyluk v. Ainsworth Technologies Inc.*, 2001 SCC 44 at paras. 40-41.

67. In the Joint Investigation, the Offices—including the OIPC—assessed whether OpenAI's "[c]ollection, use and disclosure of personal information included in users' interactions with ChatGPT" was for purposes that a reasonable person would consider appropriate in the circumstances. As a preliminary matter, the Offices recognized that "OpenAI's collection of user interactions is necessary to efficiently respond to user queries" and held that this aspect of the complaint was not well-founded.

Misceo #1, Ex A at paras. 18, 57, 100-106.

68. As such, insofar as the Investigation concerns OpenAI's collection, use and disclosure of personal information for use in an individual's—including Ms. Van Rootselaar's—interactions with ChatGPT, these issues have already been determined with finality by the Joint Investigation. The parties to the Investigation were both parties to the Joint Investigation.

69. Furthermore, the OIPC determined in the Joint Investigation that "individual and social harms beyond privacy" were outside the mandate of the OIPC. To the extent that the

Investigation pertains to content moderation and online safety, those issues have already been determined by the OIPC itself to be outside the OIPC's jurisdiction.

Misceo #1, Ex. A at para. 543.

### *e. The Investigation is a Relitigation of the Joint Investigation*

70. In the alternative, the Investigation concerns the same subject matter previously investigated and adjudicated as part of the Joint Investigation, and is thereby an abuse of process through relitigation.

71. Following the conclusion of an administrative proceeding, the doctrine of abuse of process prevents a subsequent investigation or inquiry in circumstances that violate principles such as finality, consistency, judicial economy, fairness, and the integrity of administrative decision-making.

*Elsner v. British Columbia (Police Complaint Commissioner)*, 2018 BCCA 147 at paras. 84-90; *Otis Canada (Re)*, 2012 BCIPC 11 at paras. 34-35; *Visser v. Assoc. of Professional Engineers and Geoscientists of B.C.*, 2006 BCCA 555.

72. The Investigation states it is examining, and requires OpenAI to respond to Requests regarding, OpenAI's use of Ms. Van Rootselaar's personal information in delivering ChatGPT responses. The prior Joint Investigation comprehensively addressed the same subject: OpenAI's compliance with *PIPA* in relation to the collection, use and disclosure of personal information in user interactions with ChatGPT.

73. Accordingly, the Investigation violates the principles of finality, consistency, judicial economy, fairness, and the integrity of administrative decision-making. The Investigation raises the very real and serious risk of inconsistent findings.

74. OpenAI worked with—and indeed continues to work with—the Offices for over three years in the Joint Investigation. Given the duplication of the Investigation and the Joint Investigation, the Investigation constitutes relitigation, and OpenAI asks that it be quashed.

### *f. In the alternative, Requests 1-5 are Res Judicata*

75. In the alternative, *res judicata* bars the Categories addressing “background information” and “response generation and personalization”, and in particular Requests 1-5. The subject matter of these Requests has already been finally determined by the Joint Investigation. The Order frames these Requests as information sought by the OIPC to ensure that investigators have a baseline understanding of ChatGPT. The Joint Investigation already investigated ChatGPT extensively and obtained a thorough “baseline understanding”.

## *D. Requests 5-12, 15-17, and 19 Are Not Relevant to the Investigation and are unconstitutional*

76. If the investigation is based on reasonable grounds, which OpenAI denies, the Requests are unconstitutional or, in the alternative, unreasonable, because the documents sought are not relevant; they are unclear or overly broad; or they otherwise fall outside the OIPC’s statutory mandate.

### a. PIPA s. 38 permits the production of relevant documents and information, consistent with *Charter* section 8

77. The OIPC’s power to compel production under section 38 of *PIPA* does not stand on its own. Section 38 authorizes the OIPC to order production of documents or answers to questions only *for the purposes of conducting an investigation under section 36*.

*PIPA*, ss. 36, 38.

78. On its face, s. 38 grants the OIPC power for the sole purpose of an investigation into the suspected non-compliance for which reasonable grounds exist. Accordingly, a production order for documents that are not relevant to the investigation is not made “for the purposes of” an investigation under s. 36 and is outside the OIPC’s statutory authority.

*Rizzo & Rizzo Shoes Ltd. (Re)*, [1998] 1 S.C.R. 27 at para. 21; *Bell ExpressVu Limited Partnership v. Rex*, 2002 SCC 42 at para. 26.

79. Furthermore, pursuant to the presumption of constitutionality, section 38(1) of *PIPA* should be interpreted to conform with section 8 of the *Charter*. Compulsory production

orders in a regulatory context are "seizures" subject to section 8 of the *Charter*, and they must comply with constitutional limits.

*Canadian Charter of Rights and Freedoms, Part 1 of the Constitution Act, 1982,* being Schedule B to the Canada Act, 1982 (UK), 1982, c. 11, s. 8; *R. v. Ruzic*, 2001 SCC 24 at para. 26; *Canada (Commissioner of Competition) v. Amazon.com.ca, ULC*, 2026 FCA 64 at para. 29.

80. Documents requested by the OIPC must be reasonably relevant, within the scope of the investigation, and compliant with any statutory constraints on the OIPC's powers. Requests must be clear and specific, and they must be no broader than necessary to fulfill the purpose of the investigation.

*Yukon (Government of) v. Information and Privacy Commissioner*, 2026 YKSC 50 at para. 36.

81. Furthermore, a regulatory body must have a "realistic foundation" to believe the documents requested will be relevant to its inquiry. Relevance is required for a seizure to be constitutionally valid. Material will not be relevant if the demands made by the regulator are broader than needed for the purposes of that inquiry.

*Canada (Commissioner of Competition) v. Amazon,com.ca, ULC*, 2026 FCA 64 at para. 36; *Binance Holdings Limited v. Ontario Securities Commission*, 2025 ONCA 751, at paras. 89-98 (leave to appeal to SCC granted, 2026 CanLII 47886).

b. **The Requests are an unconstitutional search and seizure**

82. Whether a seizure is reasonable within the meaning of *Charter* s. 8 is determined by assessing: (1) whether the target of the seizure had a reasonable expectation of privacy giving rise to a corresponding seizure, and (2) whether the seizure itself was reasonable.

*York Region District School Board v. Elementary Teachers' Federation of Ontario*, 2024 SCC 22 at paras. 101-102, 104.

83. The Order engages OpenAI's reasonable privacy expectations. In this case, the Order compels production of not only commercial documents, but also documents containing the private information of a deceased individual who has no ability to be notified of their disclosure. In addition, commercial documents, including those targeted by the Order, are

protected under section 8 of the *Charter* because they possess an informational privacy interest.

*Canada (Commissioner of Competition) v. Amazon,com.ca, ULC,* 2026 FCA 64 at paras. 35-36.

84. While the Order was authorized by *PIPA* s. 38(1), it goes beyond its constitutional boundaries: the Requests in the Order are broader than needed for purposes of the Investigation.

*Binance Holdings Limited v. Ontario Securities Commission,* 2025 ONCA 751 at paras. 90, 96 (leave to appeal to SCC granted, 2026 CanLII 47886)

85. Many of the Requests are not relevant to the investigation for which the OIPC has asserted reasonable grounds. For instance, the OIPC has requested documents regarding OpenAI's human review of Ms. Van Rootselaar's accounts. The OIPC has also requested documents and information relating to ChatGPT's internal flags and OpenAI's determinations regarding whether to refer Ms. Van Rootselaar's account to law enforcement, both before and after the tragedy. These documents are unrelated to how ChatGPT used Ms. Van Rootselaar's personal information in generating responses.

86. Furthermore, OpenAI has advised the OIPC that solicitor-client privilege attaches to records of OpenAI's determinations regarding whether to refer a user's account to law enforcement. The OIPC knew this when it issued the Order, but it included Requests 5-7 anyway. Moreover, it pre-emptively asked for a description of any document being withheld on the basis of privilege, indicating that it has *already* decided to dispute OpenAI's assertion of privilege. This is not the restrained approach to solicitor-client privilege required by *PIPA*.

*PIPA* s. 3(3)*; British Columbia (Children and Family Development) v. British Columbia (Information and Privacy Commissioner),* 2024 BCCA 190 at para. 58*; University of Saskatchewan v Saskatchewan (Information and Privacy Commissioner)*, 2018 SKCA 34 at paras. 49-51, 81-84.

87. Similarly, many of the Requests are overly broad and exceed the scope of the OIPC's authority under *PIPA*. The OIPC has requested documents pertaining to OpenAI's content moderation practices that go well beyond how personal information is collected, used or

disclosed in that process. Likewise, the OIPC's demand for production of *all* of Ms. Van Rootselaar's interactions with ChatGPT is vastly overbroad.

88. In substance, the OIPC's Requests appear to be an investigation into the Tumbler Ridge tragedy, disconnected from privacy law. The OIPC's concerns regarding online safety and the nature of outputs from generative artificial intelligence programs are beyond the OIPC's expertise.

Misceo #1, Ex. A at para. 543; *Digital Safety Act and the Digital Safety Commission of Canada Act*, Bill C-34, 45th Parl, 1st Sess, 2026.

89. In any event, an administrative decision-maker must clearly acknowledge and analyze all applicable *Charter* rights. Nowhere in the Order or the correspondence leading up to the Order does the OIPC address or engage with section 8 of the *Charter*. As such, the OIPC was incorrect to issue the Order.

*Vavilov Canada (Minister of Citizenship and Immigration) v. Vavilov*, 2019 SCC 65 at para. 56; *York Region District School Board v. Elementary Teachers' Federation of Ontario*, 2024 SCC 22 at para. 94.

***E. Requests 1-2 and 4-6 require an unnecessary production of personal information, contrary to FOIPPA***

90. The Order demands production of *all* of Ms. Van Rootselaar's interactions with ChatGPT. This would create a troubling precedent. The OIPC should not be permitted to require production of *all* of an individual's interactions with an online platform based solely on news reports that the individual did, in fact, interact with that platform.

91. When the OIPC demands that an organization disclose the personal information of its users for an investigation under s. 38 of *PIPA*, the OIPC is itself collecting that personal information. As a public body, the OIPC is bound by the limits of *FOIPPA*.

*FOIPPA*, s. 26 and Sch. 1.

92. Pursuant to section 26 of *FOIPPA*, a public body may collect personal information only if an enumerated ground applies. Section 26(a) provides that collection is permissible when "expressly authorized under an Act". Section 38(1)(b) of *PIPA* authorizes the OIPC to require production of documents "including a document containing personal information".

However, *PIPA* allows the OIPC to collect this information only "for the purposes of conducting an investigation or an audit under section 36".

93. Moreover, section 26(c) of *FOIPPA* states that a public body may collect personal information only if "the information relates directly to and is necessary for a program or activity of the public body". When read in its entire context, this provision of *FOIPPA* ensures that public bodies are held to a rigorous standard of necessity when collecting personal information. That standard limits the OIPC's authority to demand document production pursuant to s. 38(1)(b): the OIPC cannot demand personal information unless it is necessary, assessed in a searching and rigorous way.

*FOIPPA*, s. 26; *Re University of British Columbia*, 2013 BCIPC 4 at paras. 51-52.

94. The quasi-constitutional nature of privacy legislation places similar limits on the OIPC's authority to demand document production. When the OIPC, a public body, compels production of personal information, it is acting in the public sector, and its powers must be exercised only if necessary and in a manner that is minimally invasive.

*Alberta (Information and Privacy Commissioner) v. United Food and Commercial Workers, Local 401*, 2013 SCC 62, at para. 19; *Lavigne v. Canada (Office of the Commissioner of Official Languages)*, 2002 SCC 53 at para. 24; *(Re) University of British Columbia,* 2013 BCIPC 4 at para. 52.

95. The OIPC has requested production of *all* of Ms. Van Rootselaar's interactions with ChatGPT and has stated that its purposes for doing so are to "have a baseline understanding of ChatGPT" and "to understand why and how certain content was flagged". Not only is this *res judicata* and beyond the scope of the OIPC's expertise, as set out above, but also it is an extensive, unnecessary invasion of privacy.

96. The OIPC must limit its requests to what is actually necessary to determine the believed non-compliance, and it must satisfy itself by the least intrusive means reasonably available. There are several alternative measures that the OIPC could pursue to conduct this investigation, including by conducting internal testing on ChatGPT, as was done by the Offices in the Joint Investigation.

97. Furthermore, OpenAI is an American company and is subject to the *Stored Communications Act* (the "***SCA***"), which states that providers of remote computing services or electronic communication services must not knowingly disclose stored communication contents to "any person or entity" unless a statutory exception applies.

18 U.S.C. § 2702(a)(1)–(2).

98. A statutory exception to the disclosure prohibition exists for orders of foreign governments, but the orders must be subject to an executive agreement certified by the Attorney General of the United States to satisfy certain legislated requirements under § 2523. Canada and the United States have engaged in formal negotiations to establish a cross-border data-sharing framework under the *Clarifying Lawful Overseas Use of Data (CLOUD) Act* (which amends the *SCA*), but no formal agreement has been reached.

18 U.S.C. § 2702.

99. The Court of Appeal has recognized that overlapping, multi-jurisdictional regulatory authority over privacy and data protection is a "feature, not a flaw", and promotes the seamless coverage of regulatory protection. By corollary, the OIPC should apply the principle of comity when making orders with transnational effects.

*Clearview AI Inc. v. British Columbia (Information and Privacy Commissioner for British Columbia)*, 2026 BCCA 67 at paras. 58-60; *Morguard Investments Ltd. v. De Savoye,* [1990] 3 S.C.R. 1077.

100. In this case, the Order would require OpenAI to violate the *SCA*. If the OIPC intends to order production of personal information notwithstanding the *SCA*, then—consistent with comity and with BC's own privacy laws—the infringement must be as minimal as possible, and the Requests must be necessary for the investigation.

101. The Requests are not minimally invasive, and they are unnecessary to the exercise of the OIPC's statutory authority. The Order is unreasonable as a result.

### *F. Relief sought*

102. The Investigation goes well beyond the statutory limits of the OIPC's authority. The OIPC lacks coherent reasoning for pursuing the Investigation, and it is not justified. Moreover, it

duplicates matters addressed thoroughly in the Joint Investigation. The Investigation appears to be an attempt by the OIPC to enquire into online platforms generally, including online safety and content moderation practices. Neither of these matters are within the OIPC's expertise or jurisdiction. As such, the Investigation should be quashed.

*Canada (Minister of Citizenship and Immigration) v. Vavilov*, 2019 SCC 65 at paras. 99-107.

103. In the alternative, the Order goes well beyond the statutory and constitutional limits of the OIPC's authority. It lacks internal coherent reasoning, and it is not justified. Remitting the matter back to the OIPC would serve no useful purpose and would not be an efficient use of public resources, particularly in light of the three-year Joint Investigation. The appropriate remedy is an order quashing and setting aside the Order.

*Canada (Minister of Citizenship and Immigration) v. Vavilov*, 2019 SCC 65, at para. 142.

**Part 4: MATERIAL TO BE RELIED ON**

1. Affidavit #1 of Cristina Misceo, made on October 26, 2026;

2. Further affidavits to be sworn; and

3. Such other material as counsel may advise and this Court may allow.

Dated: October 26, 2026

Signature of Lawyer for the petitioner
Emily MacKinnon / Maya Churilov

| *To be completed by the court only:* | |
|---|---|
| Order made<br>[ ] in the tems requested in paragraphs ..................... of Part 1 of this petition<br>[ ] with the following variations and additional terms:<br>..........................................................................<br>..........................................................................<br>.......................................................................... | |
| Date: .......*[dd/mmm/yyyy]*........ | ..................................................<br>Signature of [ ] Judge [ ] Master |