# Exhibit A

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, California 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

*Attorneys for Plaintiffs His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

HIS MAJESTY THE KING IN RIGHT OF THE PROVINCE OF BRITISH COLUMBIA and BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 59 (PEACE RIVER SOUTH), individually,

*Plaintiffs*,

v.

SAMUEL ALTMAN, an individual, OPENAI FOUNDATION (F/K/A OPENAI, INC.), a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, OPENAI HOLDINGS, LLC, a Delaware limited liability company, OPENAI GROUP PBC, a Delaware public benefit corporation, and DOES 1 through 10,

*Defendants*.

Case No. 3:26-cv-10743-JSC

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT OPENAI OPCO, LLC**

Judge: Hon. Jacqueline Scott Corley

**PROPOUNDING PARTIES:** Plaintiffs His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South)

**RESPONDING PARTY:** Defendant OpenAI OpCo, LLC

**SET NUMBER:** One (1)

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South) ("Plaintiffs" or the "BCGEs"), requests that Defendant OpenAI OpCo, LLC produce for identification, inspection, and copying via electronic service, or if electronic service is not feasible, at the offices of Stranch, Jennings & Garvey, PLLC, 1111 Broadway, Suite 300, Oakland, California 94607, each and all of the following documents and tangible things within thirty (30) days of service of these Requests.

## DEFINITIONS

1. Each of these definitions and instructions is incorporated into each of the requests to which it pertains. Notwithstanding any definition below, each word, term, or phrase used in these requests for production is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "Account Level Information" means account registration and profile information, user inputs and corresponding model and assistant outputs, memory and custom-instructions history, saved information, user feedback signals, experiment feature assignments, session information, Metadata at the account, conversation, and message levels with timestamps, user identifiers and authentication data, analytics data, subscription and payment records, and any category of data collected as mentioned in Your privacy policy.

3. "Accounts" means any accounts maintained by, associated with, or attributed to Van Rootselaar, Including but not limited to: (a) the account bearing user ID user-lThH8LNCG6kwLNkKM6TGIEpU, email address jesseboy347@gmail.com, display name "Jesse Strang," telephone number +1 (250) 242-8724, organization ID org-6g287jmv622rh5i3ymchghJD, login identifiers google-oauth2|102452345048927510901 and auth0|63d5b95a1e335354c254075c, end-user ID

ec00ef1b-32c4-4c88-83ad-57eb7568e7f9, and authentication session ID authsess_OWZzKt1iDhAQrG8D49AIu3iA (*see* OAI_TR_0003679 through OAI_TR_0003690) ("Account 1"); (b) the account bearing user ID user-EMRY79zzSGPqmNSeBjgHy2HU, email address lavendercity743@gmail.com, display name "Lola Lavender," organization ID org-Spqcz9OhNj86LD7Sv2f8hCfR, login identifier google-oauth2|104582714464352142486, and Assistants API thread ID thread_mVCBLDptaTbXGfHgrmua9LnM (*see* OAI_TR_0003667 through OAI_TR_0003678) ("Account 2"); (c) any account on ChatGPT, Sora, the OpenAI API platform, or any other OpenAI product or service that used device identifier 22B2DDEE-BF69-4173-A4E0-4E2852D3452E, b1c590c7-c04f-453c-9d28-76c1c5142164, 97DDC26C-0063-4527-8D48-D71BCB67B678, or ef6414c4-2448-424f-84c6-30d3926fe1ef; (d) any account that shares with Account 1 or Account 2 any email address, telephone number, login identifier, payment instrument, or device identifier; (e) any account that accessed any OpenAI product or service from IPv6 network 2605:59c8:53c:3b10::/64; and (f) any account that You linked, by any means, to Account 1 or Account 2, Including through any IP address, browser or TLS fingerprint (Including JA3 and JA4 hashes), cookie, or advertising identifier.

4. "All," "or," and "and" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

5. "Altman Letter" means the letter from Samuel Altman, Chief Executive Officer of OpenAI, to the community of Tumbler Ridge, dated April 23, 2026.

6. "ChatGPT" means the ChatGPT product and service in every version and interface in which it has been made available, Including the web interface, mobile applications, desktop applications, and voice interfaces, and Including All features of that product and service such as memory, persistent personalization, custom instructions, personas, and voice mode.

7. "ChatGPT Conversation Logs" means conversations with ChatGPT associated with the Accounts, in native format with All associated Metadata, Including text conversations, voice conversations (both audio recordings and transcripts), photographs and files uploaded, and any deleted, archived, temporary, or otherwise no-longer-visible conversations, and any copy of a conversation retained in any

repository used for human review, annotation, rating, evaluation, or safety review, however denominated, regardless of whether the conversation remains visible in the user-facing interface and regardless of whether that repository is subject to different retention rules.

8. "Communication" or "Communications" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, Including but not limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, daily calendars, declaration, discussion, dissemination, elucidation, expression, interchange, letters, memorandum, message board postings, messages sent or received through social media or other online service such as Slack, note or logs of meetings, publication, reception, revelation, social media postings, talk, transfer, transmission, or utterance. The term also Includes the circumstances by which You came into possession of any Document evidencing a Communication.

9. "Completion Request" means each request for model output associated with the Accounts that any OpenAI system received or generated, whether submitted through ChatGPT, the OpenAI API platform, the Playground, or any other OpenAI product, interface, application, or API key. The term Includes each request that You generated on behalf of the Accounts, such as a request to generate a conversation title, summary, or memory. It also Includes each request that any log, table, or data store You maintain records, Including the requests that appear in OAI_TR_0003674 and OAI_TR_0003686, regardless of whether a corresponding message appears in the ChatGPT Conversation Logs.

10. "Document" or "Documents" means any writings, letters, telegrams, memoranda, correspondence, Communications, email messages, memoranda or notes of conferences or telephone conversations, reports, studies, lists, compilations of data, papers, books, records, contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm, computer data files, printouts, accounting statements, mechanical and electrical recordings, checks, pleadings, and other tangible things upon which any handwriting, typing, printing, drawing, representation, photo, or other magnetic or electrical impulses or other form of Communication is recorded, stored or produced, Including audio and video recordings, and ESI (Including emails, web pages, websites, computer discs, computer programs, and computer files), whether or not they are in printout form. These terms shall also mean copies of Documents even if the originals are not in Your possession, custody or control; every copy of a Document which contains

handwritten or other notations or which otherwise does not duplicate the original of any other copy; All attachments to any Documents; and any other Documents, items, and/or information discoverable under federal law and procedure, Including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

11. "ESI" means computer-generated information or data of any kind, stored on computers, file servers, discs, tape or other devices or Media, or otherwise evidenced by recording on some storage Media, whether real, virtual, or cloud-based.

12. "First Amended Complaint" refers to the First Amended Complaint, filed on October 29, 2026 in the above-referenced action (ECF No. 30-1).

13. "Identify" or "Identifying," with respect to a natural Person, means the Person's full name, and last known job and title (if in Your possession).

14. "Identify" or "Identifying," with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form, the address of its principal place of business, and to Identify its principal proprietors, officers, and/or directors.

15. "Identify" or "Identifying," with respect to a Document, means to state the date(s) prepared, drafted or generated, the author(s), intended and actual recipient(s), type of Document, and to Identify its last known custodian or location.

16. "Identify" or "Identifying," with respect to an event, transaction, or occurrence, means to describe the act in complete and reasonable detail; state the time, date, location; Identify All Persons participating or present; and Identify All Documents Relating thereto.

17. "Including" is used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The term "Including" shall be construed as if followed by the phrase "but not limited to."

18. "Media" means an object or device, real or virtual, Including a disc, tape, computer, or other device, on which data is or was stored.

19. "Metadata" means data about data, Including information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified the native file, which describes the characteristics, origins, usage and validity of the electronic file, as well as

information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

20. "Moderation System" means any content moderation tool utilized by OpenAI, Including the Moderation API and any automated systems to Identify, categorize, score, flag, and filter content that may violate Your terms or policies Related To safety and content moderation, and any human review, annotation, or decision-making layered on top of any such tool.

21. "O'Leary Letter" means the letter from Ann M. O'Leary, Vice President of Global Policy of OpenAI, to the Honourable Evan Solomon, P.C., dated February 26, 2026.

22. "OpenAI" and "Defendant" means Defendant OpenAI OpCo, LLC.

23. "Person" means any natural person, corporation, partnership, association, organization, joint venture, or other entity of any type or nature.

24. "RCMP" means the Royal Canadian Mounted Police.

25. "Relating To," "Related To," "Relate To," "Refer To," or "Concerning" or any variations thereof, mean referring to, pertaining to, reflecting, containing, evidencing, supporting, describing, establishing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, setting forth, summarizing, characterizing, and/or contradicting, either directly or indirectly, in full or in part.

26. "Safety System" means any safety processes, procedures, or components the model and its assistant use to ensure safe interactions with users based on OpenAI's safety guidelines.

27. "Shooting" means the shooting perpetrated by Van Rootselaar on February 10, 2026 in Tumbler Ridge, British Columbia, Canada.

28. "Van Rootselaar" means Jesse Van Rootselaar.

29. "You" or "Your" means OpenAI OpCo, LLC and its present and former divisions, parents, present and former subsidiaries (Including OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI Group PBC, OpenAI Holdings, LLC, and any other OpenAI entity), predecessors and successors, present and former officers, present and former directors, present and former agents, present and former attorneys, present and former employees, and All Persons acting, purporting to act, or that have purported to act on behalf of any of them.

## INSTRUCTIONS

1. If, in responding to these requests, You encounter ambiguities when construing a question, instruction, or definition, Your answer shall set forth the matter deemed ambiguous and the construction used in answering.

2. Unless otherwise specified, Documents (Including electronically stored information) shall be produced consistent with and in the manner set forth in the applicable ESI Protocol or, to the extent such ESI Protocol has not yet been entered by the Court, the portions of the ESI Protocol upon which the parties agree. At a minimum, if an ESI Protocol has not yet been entered, Documents shall be produced as they are kept in the ordinary course of business, with All applicable metadata.

3. If an ESI Protocol has not yet been entered, in scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). You shall use best efforts to unitize documents correctly. Where a document, or document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping. You will also utilize best efforts to ensure that paper records, which are included in a single production, are produced in consecutive Bates-stamp order.

4. These Requests for Productions should be deemed continuing such that if Your directors, officers, employees, agents, representatives, or any person acting on Your behalf, subsequently discover or obtain possession, custody, or control of any Document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional Documents become available.

5. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce All Documents describing or referencing (1) the contents of the lost or destroyed Document; (2) All locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction

of any lost or destroyed Document; (5) All Document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) All efforts made to locate any responsive Document alleged to have been lost or destroyed.

6. If You object to any item or category of item, Your response shall (a) Identify with particularity each Document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

7. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log consistent with the Court's Civil Standing Order.

8. In responding to these Requests for Production, You are to Include Documents (1) obtained from witnesses who gave information to any governmental agency or investigatory body, Including Congress; (2) that constitute, refer or relate to summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation, Including before Congress; or (3) obtained on Your behalf in preparation for testimony or interviews before any governmental agency or investigatory body, Including Congress.

9. Documents within Your possession, custody, or control must be produced regardless of which entity created, authored, or maintains them. If You contend that Documents responsive to any Request are held by a Defendant other than OpenAI OpCo, LLC and are outside Your possession, custody, or control, Identify the Request, the entity, and the basis for that contention in Your written response.

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All Account Level Information for the Accounts, Including All data and All Completion Requests associated with each user ID, login identifier, organization ID, and device identifier set forth in Definition No. 3, and every Moderation System and Safety System output associated with any message in the Accounts.

**REQUEST FOR PRODUCTION NO. 2:**

For each Completion Request associated with the Accounts (Including the 6,347 requests for Account 1 recorded in OAI_TR_0003686 and the 23 requests for Account 2 recorded in

OAI_TR_0003674), All Documents showing: (a) the full prompt, query, or other input; (b) every output, generation, or response; (c) the conversation ID, message ID, request ID, model, API key, organization ID, and product or interface through which the user submitted the request; and (d) All associated Metadata, in native format. This Request Includes each Completion Request for which Your production left the PROMPT, GENERATION, CONVERSATION_ID, or MODEL field blank or omitted the field, Including All 6,347 requests in OAI_TR_0003686 and 16 of the 23 requests in OAI_TR_0003674, and each Completion Request that has no corresponding message in the ChatGPT Conversation Logs, Including at least 4,100 requests in OAI_TR_0003686 and 16 requests in OAI_TR_0003674.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and Communications Related To Van Rootselaar and/or the Accounts sufficient to Identify and explain: (a) All human and/or algorithmic reviews of the Accounts, before and after the Shooting, Including All policies in effect, considered, or applied in the course of the reviews; (b) All of Your decisions about whether or not to refer the Accounts to any U.S. or Canadian regulatory, governmental or executive entity (or any person employed by them), Including but not limited to the RCMP or the BCGEs, both before and after the Shooting; (c) how and when You identified each Account after the Shooting; and (d) Your February 11, 2026 termination of Account 2.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to Identify All individuals, by name, title, and current employment, who participated in any fashion in (a) any human-level review of the Accounts and/or (b) discussions and/or decisions regarding whether to refer Van Rootselaar or the Accounts to any regulatory, governmental, nonprofit, for-profit enforcement agency, and/or support agency, entity, or person, Including but not limited to Canadian authorities, such as the RCMP, or to Interpol; and (c) Documents sufficient to establish their involvement in such decisions, Including reporting hierarchies and who had the authority to make final decisions.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents Concerning discussing the subject matter of the First Amended Complaint with the BCGEs, Including the Premier, RCMP, or any other regulatory, law enforcement, or governmental body in Canada.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents relating to the subject matter of the O'Leary Letter, the Altman Letter, and any other public statement Concerning Van Rootselaar or the Accounts, Including drafts, and whether promises made in them have been put into effect.

Dated: November 13, 2026

Respectfully submitted,

By: /s/ *Lesley E. Weaver*
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
Stranch, Jennings & Garvey, PLLC
1111 Broadway, Suite 300
Oakland, California 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

*Attorneys for Plaintiffs His Majesty the King in Right of the Province of British Columbia and Board of Education of School District No. 59 (Peace River South)*

**Certificate of Service**

I, Julie Law, hereby certify that on November 13, 2026, I caused a true and correct copy of the foregoing to be sent via electronic mail to the following counsel of record:

Jonathan H. Blavin (SBN 230269)
jonathan.blavin@mto.com
Stephanie G. Herrera (SBN 313887)
stephanie.herrera@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Bethany W. Kristovich (SBN 241891)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendants Samuel Altman, OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI Opco, LLC, OpenAI Holdings, LLC, and OpenAI Group PBC*

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at Oakland, California on November 13, 2026.

*/s/ Julie Law*
Julie Law